IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| **Thelton George Parker, Jr., and Steven Doyle,** *Individually and on Behalf of All Others Similarly Situated*,<br><br>　　　　　　　　　　　　**Plaintiffs,**<br>　　v.<br>**Verizon Communications Inc. and Cellco Partnership d/b/a Verizon Wireless,**<br><br>　　　　　　　　　　　　**Defendants.** | 1:24-cv-08436<br>Hon. Jorge L. Alonso |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS'
MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS
<u>PURSUANT TO THE FEDERAL ARBITRATION ACT</u>**

**I.　　INTRODUCTION**

Plaintiffs, customers of Cellco Partnership d/b/a Verizon Wireless ("Verizon Wireless"), filed this putative class action against Verizon Wireless and its holding company, Verizon Communications, Inc.[1] ("VCI") (together, "Verizon"), alleging violations of the Illinois Biometric Privacy Act, 740 ILCS 14/1, *et seq.* ("BIPA"). They seek to represent a class of Illinois residents who enrolled in and used Voice ID over the past five years. Plaintiffs' claims fail as a matter of law[2], but more fundamentally they do not belong in this Court. Plaintiffs must individually arbitrate their claims in accordance with the binding arbitration and class-action waiver in the My Verizon Wireless Customer Agreement (the "Agreement"). *See* Declaration of Joseph Ninete ("Decl."), Ex. 8 at p. 6. That arbitration agreement is valid under the Federal Arbitration Act ("FAA"), 9 U.S.C. § 2, and the Supreme Court's decision in *AT&T Mobility, LLC v. Concepcion*, 563 U.S. 333 (2011) and its progeny. It delegates to the arbitrator any questions

---

[1] As discussed below at Section IV(E), pp. 14-15, VCI is not a proper party to this action and is not liable as a holding company.

[2] Verizon is filing a contemporaneous motion to dismiss the Complaint under Fed. R. Civ. P. 12 (b)(6) solely to preserve those defenses but the Court need not—and should not—reach the merits raised in that motion because the dispute must be arbitrated.

of arbitrability, validity or enforceability. Decl., Ex. 8 at p.6. This Court therefore should compel Plaintiffs to individual arbitration.

## II. BACKGROUND

### A. Plaintiffs Are Bound By The Verizon Wireless Customer Agreement.

Plaintiffs are Verizon Wireless customers. Compl. (DN1), ¶¶ 50, 56; Decl., ¶¶ 5-6, 19-20. As customers who purchased, activated, and used Verizon Wireless services and products, Plaintiffs acknowledged and agreed to the Agreement, which sets forth the terms and conditions of service and includes a clear and conspicuous arbitration agreement. *See id.*, ¶ 4.

#### i. Mr. Parker

On February 21, 2022, Mr. Parker purchased Verizon Wireless service plans for two separate accounts. *Id.*, ¶ 6. At the time of purchase, he executed two Service Customer Receipts ("SCR")[3]—one for each account—agreeing to resolve all disputes through arbitration. *Id.*, ¶¶ 6-9. Both SCRs state:

> I agree to the current Verizon Wireless Customer Agreement (CA)… which I have had the opportunity to review. I understand that I am agreeing to… settlement of disputes by arbitration and other means instead of jury trials and other important terms in the CA… By using this Service you are agreeing to every provision of this Agreement whether or not you have read it.

*Id.*, ¶ 8. By signing, Mr. Parker acknowledged that he read and agreed to the then operative Agreement "including settlement of dispute by arbitration instead of jury trial." *Id.* When he signed the February 21, 2022 SCRs and at any time thereafter, Mr. Parker could access the Agreement by visiting www.verizonwireless.com. *Id.*, ¶ 10.

The first page of the then operative Agreement states, in bold text, that "**any disputes between us must be resolved in arbitration or small claims court**," and that Verizon Wireless

---

[3] SCRs are customer receipts for transactions with Verizon Wireless, including, but not limited to, purchasing a service plan or contract.

1

has the "**ability to make changes to your Service or this Agreement's terms**." *Id.*, Ex. 2, at p.1. It also states: "By using the Service, you are agreeing to every provision of this Agreement whether or not you have read it." *Id.* And it provides: "We may change prices or any other term of your Service or this Agreement at any time, but we'll provide notice first… If you use your Service after the change takes effect that means you're accepting the change." *Id.*, Ex. 2, at p.2. The arbitration provisions are set off from other text in bold type and/or capital letters, and set in a gray box. *Id.*, Ex. 2, at pp. 6-8.

Mr. Parker has been a Verizon Wireless customer at all times since February 2022 and continues to use Verizon Wireless service. *Id.*, ¶¶ 5-6. He executed at least 11 separate SCRs for his two Verizon Wireless accounts during this time—all of which referenced and incorporated the then-current Agreement and its agreement to resolve disputes through arbitration. *Id.*, ¶ 15. Indeed, on September 13, 2024—the very day Plaintiffs filed this Complaint—Mr. Parker signed an SCR and agreed "to the Verizon Customer Agreement including settlement of dispute by arbitration instead of a jury trial." *Id.*, ¶ 16.

Mr. Parker received notice of changes to the arbitration provision over time, including in monthly statements for August 2022, November 2022, February 2023, and June 2023. *Id.*, ¶ 17-18, 42. This action is governed by the August 22, 2024 Customer Agreement, which was in effect when Plaintiffs filed the Complaint.[4] *See, e.g., Boomer v. AT&T Corp.*, 309 F.3d 404, 415 (7th Cir. 2002) (Under Illinois law, telephone service customer who received mailed notice of

---

[4] By continuing to use their Verizon Wireless service after being notified of changes to the Agreement, Plaintiffs agreed to those changes and to be bound by the August 2024 Agreement. *See* Decl., ¶¶ 13, 27, 34. The August 2024 Agreement applies to any dispute that arises thereafter. *See id.*, ¶ 34 ("[I]f we make any changes to the dispute resolution provision of this Agreement, such changes will not affect the resolution of any disputes that arose before such change."), ¶ 13 (same), ¶ 27 (same). Plaintiffs' dispute necessarily did not arise until after they filed their Complaint in this action. *See Carlson v. Glueckert Funeral Home, LTD*, 407 Ill App. 3d 257, 263 (2011) (a "dispute" is "an assertion of a right, claim or demand on one side, met by contrary claims or allegations on the other"). Therefore, the August 2024 Agreement governs Plaintiffs' claims.

2

new terms—including a new arbitration provision—accepted those terms by continuing to use the phone service); *Sherman v. AT&T, Inc.*, C.A. No. 11-C-5857, 2012 WL 1021823, at *4 (N.D. Ill. Mar. 26, 2012) (internet service customer bound by revised arbitration provision where customer "agreed to a contract with a change-in-terms-provision," and received an e-mail notice with information about the revisions).

    ii. Mr. Doyle

  On December 14, 2019, Mr. Doyle purchased a Verizon Wireless service plan (Decl., ¶¶ 19-20) and executed an SCR agreeing to abide by the terms of the then-current Agreement (effective November 28, 2019) and resolve all disputes through arbitration instead of a jury trial. *Id.*, ¶¶ 21-23. By signing, Mr. Doyle acknowledged that he read and agreed to the Agreement and to the "settlement of disputes by arbitration instead of jury trial." *Id.*, ¶¶ 22-23. When he purchased his service plan and at any time thereafter, Mr. Doyle could access the Agreement, and any subsequent versions of the Agreement, by visiting www.verizonwireless.com. *Id.*, ¶ 24.

  The first page of the then operative Agreement states, in bold text: that "**any disputes between us must be resolved in arbitration or small claims court**," and that Verizon Wireless has the "**ability to make changes to your Service or this Agreement's terms**." *Id.*, Ex. 5, at p.1. It also states: "By using the Service, you are agreeing to every provision of this Agreement whether or not you have read it." *Id.* And it provides: "We may change prices or any other term of your Service or this Agreement at any time… If you use your Service after the change takes effect that means you're accepting the change." *Id.*, Ex. 5, at p.3. The arbitration provision is prominently displayed in bold type and/or capital letters, and set off by a bold border. *Id.*, Ex. 5 at pp. 6-8.

  Mr. Doyle has been a Verizon Wireless customer at all times since December 2019 and continues to use Verizon Wireless service. *Id.*, ¶¶ 19-20. On June 4, 2022, he executed a second

3

SCR again agreeing to resolve all disputes through arbitration. *Id.*, ¶ 29. Mr. Doyle received notice of changes to the arbitration provision in monthly statements over time, including in November 2021, September 2022, December 2022, March 2023, and July 2023. *Id.*, ¶¶ 17, 30, 42. His dispute is governed by the August 22, 2024 Agreement.

### B. Plaintiffs Agreed to Individual Arbitration of Their Claims.

The August 22, 2024 Agreement to which Plaintiffs agreed prominently discloses in bold, capital letters that disputes must be resolved by arbitration or in small claims court. It specifies that the Federal Arbitration Act applies and that any dispute will be resolved before the American Arbitration Association (the "AAA"), pursuant to its Consumer Arbitration Rules. *Id.*, ¶¶ 35-36. Specifically, it states in pertinent part:

> **YOU AND VERIZON BOTH AGREE TO RESOLVE DISPUTES ONLY BY ARBITRATION OR IN SMALL CLAIMS COURT AS DISCUSSED BELOW. YOU UNDERSTAND THAT BY THIS AGREEMENT YOU ARE GIVING UP THE RIGHT TO BRING A CLAIM IN COURT OR IN FRONT OF A JURY… WE ALSO BOTH AGREE THAT:**
>
> **(1) THE FEDERAL ARBITRATION ACT APPLIES TO THIS AGREEMENT, EXCEPT FOR SMALL CLAIMS COURT CASES OR AS SPECIFICALLY NOTED BELOW, ANY DISPUTE THAT IN ANY WAY RELATES TO OR ARISES OUT OF THIS AGREEMENT WILL BE RESOLVED BY ONE OR MORE NEUTRAL ARBITRATORS BEFORE THE AMERICAN ARBITRATION ASSOCIATION ("AAA")... THIS INCLUDES, BUT IS NOT LIMITED TO, ANY DISPUTE REGARDING THE VALIDITY, ENFORCEABILITY, OR SCOPE OF ANY PORTION OF THIS AGREEMENT (INCLUDING THE AGREEMENT TO ARBITRATE), ANY EQUIPMENT, PRODUCTS AND SERVICES YOU RECEIVE FROM US… OR ALLEGED PERSONAL INJURY OR INVASION OF PRIVACY RELATING TO SUCH PRODUCTS OR SERVICES…**

*Id.*, Ex. 8, at p. 6 (emphasis in original).

Paragraph 3 includes a prominent class arbitration waiver:

> **(3) THIS AGREEMENT DOESN'T ALLOW CLASS OR COLLECTIVE ARBITRATIONS EVEN IF THE AAA PROCEDURES OR RULES WOULD… THE ARBITRATOR MAY AWARD MONEY OR INJUNCTIVE RELIEF ONLY IN FAVOR OF THE INDIVIDUAL PARTY SEEKING**

4

**RELIEF AND ONLY TO THE EXTENT NECESSARY TO PROVIDE RELIEF WARRANTED BY THAT PARTY'S INDIVIDUAL CLAIM. NO CLASS, REPRESENTATIVE OR PRIVATE ATTORNEY GENERAL OR GENERAL INJUNCTIVE RELIEF THEORIES OF LIABILITY OR PRAYERS FOR RELIEF MAY BE MAINTAINED IN ANY ARBITRATION HELD UNDER THIS AGREEMENT.**

*Id.*, Ex. 8, at pp. 6-7 (emphasis in original).

Paragraph 2 includes a general prohibition against class or collective actions stating: "IN NO WAY WILL THIS PROVISION ALLOW FOR AN ACTION TO BE BROUGHT ON A CLASS OR COLLECTIVE BASIS." *Id.*, Ex. 8, at p. 6 (emphasis in original). Additionally, Paragraph 9 includes a prohibition against class or collective action for claims proceeding in court rather than through arbitration, stating: "**IF FOR ANY REASON A CLAIM PROCEEDS IN COURT RATHER THAN THROUGH ARBITRATION** … **NO ACTION WILL BE BROUGHT ON A CLASS OR COLLECTIVE BASIS**…" *Id.*, Ex. 8 at p. 8.

The first page of the August 2024 Agreement puts customers on immediate notice that "**any disputes between us must be resolved in arbitration or small claims court**," and that Verizon Wireless has the "**ability to make changes to your Service or this Agreement's terms**." *Id.*, Ex. 8, at p.1. It also states: "By using the Service you are agreeing to every provision of this Agreement… whether or not you have read them." *Id.*

### III. STANDARD OF REVIEW

Where, as here, a valid arbitration agreement exists, and the agreement delegates the question of arbitrability to an arbitrator, then a court may not decide the arbitrability issue. *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 69 (2019) (precluding courts from overriding the parties' delegation of arbitrability to an arbitrator even if confronted with an argument that the arbitrability claim is "wholly groundless.") "In those circumstances, a court possesses no power to decide the arbitrability issue." *Coons v. Yum! Brands, Inc.*, 672 F. Supp.

5

3d 626, 635 (S.D. Ill. 2023). The FAA "leaves no place for the exercise of discretion" and directs federal courts to order the parties to proceed to arbitration. *O'Shea v. Maplebear, Inc.*, 508 F. Supp. 3d 279, 284 (N.D. Ill. 2020) (quoting *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985)).

Whether the parties entered into a valid arbitration agreement is a matter of contract law. *R.J. O'Brien & Assocs., Inc. v. Pipkin*, 64 F.3d 257, 260 (7th Cir. 1995). Where the parties have a contract that provides for the arbitration of some issues between them, any doubt concerning the scope of the arbitration clause must be resolved in favor of arbitration as a matter of federal law. *Gore v. Alltel Commc'ns, LLC*, 666 F.3d 1027, 1032 (7th Cir. 2012); *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983). "To this end, a court may not deny a party's request to arbitrate unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *Gore*, 666 F.3d at 1032. (internal quotations omitted).

**IV. ARGUMENT**

**A. The FAA Requires Enforcement of Verizon's Arbitration Provision.**

The Supreme Court has consistently instructed that it is "beyond dispute that the FAA was designed to promote arbitration," and that the FAA embodies a "liberal federal policy" favoring arbitration and arbitration agreements. *Concepcion*, 563 U.S. at 345-46. This liberal federal policy applies "notwithstanding any state substantive or procedural policies to the contrary." *Id.* at 346.

The "parties are generally free to structure their arbitration agreements as they see fit," *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 683-84 (2010), and the FAA "requires courts to enforce covered arbitration agreements according to their terms." *Lamps Plus, Inc. v. Varela*, 587 U.S. 176, 178 (2019). A written arbitration agreement "shall be valid,

6

irrevocable, and enforceable, save upon which grounds exist at law or equity for the revocation of any contract." 9 U.S.C. § 2. Courts must "rigorously" enforce agreements to arbitrate, *Epic Sys. Corp. v. Lewis*, 584 U.S. 497, 506 (2018), and must give force to all of the terms of an arbitration agreement, including those that "specify with whom [the parties] chose to arbitrate their disputes and the rules under which that arbitration will be conducted." *Am. Express Co. v. Italian Colors Rest.*, 570 U.S. 228, 233 (2013).

The FAA's broad reach encompasses arbitration agreements in contracts involving or affecting interstate commerce. *See* 9 U.S.C. § 2; *Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 274-77 (1995). Plaintiffs allege that they are both residents of Illinois, and Verizon Wireless is a Delaware entity. *See* Compl. (Docket No. 1), ¶¶ 12-13, 15. The FAA governs this contract because it is "written" in an agreement "evidencing a transaction involving commerce." 9 U.S.C. § 2; *see Mitchell v. Verizon Wireless*, C.A. No. 05-C-511, 2006 WL 862879, at *1 (N.D. Ill. Mar. 31, 2006) (applying FAA to Verizon Wireless arbitration clause in Customer Service Agreement). The Agreement itself expressly states that it is governed by the FAA. *See* Decl., Ex. 8, at p. 6. It is indisputable that the FAA governs here. *See Schafer v. AT&T Wireless Servs., Inc.*, C.A. No. 04-4149-JLF, 2005 WL 850459, at *2 (N.D. Ill. Apr. 1, 2005).

### B. The Parties Have a Valid Written Arbitration Agreement.

Plaintiffs expressly agreed to arbitrate their disputes with Verizon Wireless by signing an SCR when they first purchased wireless devices and services and each time they signed an SCR thereafter. *See* Decl., ¶¶ 7-9, 15-16, 21-23, 29. Indeed, Mr. Parker signed the August 2024 Agreement the same day he filed this Complaint. *Id.*, ¶ 16. During each transaction and through their continued use of Verizon Wireless service and products, Plaintiffs reaffirmed their agreement to settle disputes by arbitration instead of a jury trial, and to be bound by the terms of the current Agreement. *Id.*, ¶¶ 7-9, 15-16, 21-23, 29.

It is well-settled that where, as here, a party to a contract has had the opportunity to review its terms, he cannot thereafter claim to be ignorant of the terms and conditions. *Schafer*, 2005 WL 850459, at *2. Indeed, "[a] contract need not be read to be effective; people who accept take the risk that the unread terms may in retrospect prove unwelcome." *Hill v. Gateway 2000, Inc.*, 105 F3d 1147, 1148 (7th Cir. 1997) (consumer bound by arbitration clause within terms and conditions included in box with new computer). Here, Plaintiffs had clear notice of, and the opportunity to obtain, the Agreement when they first activated their service, every time they signed a SCR thereafter, and online at any other time. They are bound by its terms. *See, e.g., Schafer*, 2004 WL 850459, at *5 (plaintiff required to arbitrate claims against cell phone service provider, where arbitration provision was part of "Welcome Guide" included in box for plaintiff's new cell phone); *Crandall v. AT&T Mobility, LLC*, C.A. No. 07-750-GPM, 2008 WL 2796752, at *4 ("Whether [plaintiffs] read the terms is unimportant; they had the opportunity to do so before using their phones, and if they wished to reject the arbitration provision, they could have returned their phones and cancelled the service."); *Chandler v. AT&T Wireless Servs.*, 358 F. Supp. 2d 701, 704 (S.D. Ill. 2005) ("In accepting the phone and using the service, [plaintiff] indicated her willingness to contract on the terms offered by [her wireless service provider]."); *Mitchell v. Verizon Wireless*, C.A. No. 05-C-511, 2006 WL 862879, at *2 (N.D. Ill. Mar. 31, 2006) (enforcing Verizon Wireless arbitration agreement in Customer Service Agreement).

Not only do Plaintiffs' signed SCRs highlight that all disputes will be resolved by arbitration, so too does the Agreement—in its first paragraph, which states: "any disputes between us must be resolved in arbitration or small claims court." Decl., Ex. 8, at p. 1. The parties also agreed "**TO RESOLVE DISPUTES ONLY BY ARBITRATION OR IN SMALL CLAIMS COURT**," including "ANY DISPUTE THAT IN ANY WAY RELATES TO OR ARISES OUT OF THIS AGREEMENT." *Id.*, Ex. 8, at p. 6 (emphasis in original). This includes

8

"ANY DISPUTE REGARDING THE VALIDITY, ENFORCEABILITY OR SCOPE OF ANY PORTION OF [THE CUSTOMER] AGREEMENT (INCLUDING THE AGREEMENT TO ARBITRATE)." *Id.* (emphasis in original).

The Agreement also makes clear that Plaintiffs accepted its terms, including any changes thereto, by using Verizon Wireless cellular service. *Id.*, Ex. 8, at p. 1 ("By using the Service you are agreeing to every provision of this Agreement… whether or not you have read them.") & p. 2 ("We may change prices and/or any other term of your Service or this Agreement at any time… If you use your Service after the change takes effect that means you're accepting the change."). Plaintiffs received notice of changes in their monthly billing statements, including changes to the arbitration provision in 2021, 2022, and 2023. *See* Decl., ¶¶ 17-18, 30. The Seventh Circuit and other courts in this district have upheld such a process of informing a customer of new terms and conditions of his contract. *See Boomer*, 309 F.3d at 415; *Sherman*, 2012 WL 1021823, at *4.

By continuing to use their Verizon Wireless service, Plaintiffs are bound by the August 2024 Agreement, which is valid and supported by adequate consideration. *See Schafer*, 2005 WL 850459, at *3 ("In Illinois, a mutual promise to arbitrate is sufficient consideration to support an arbitration agreement… Furthermore, where other consideration for the contract exists, the promises to arbitrate need not be equal.").

### C. This Dispute, Including Arbitrability, Must Be Decided In Arbitration.

The August 2024 Agreement states that the arbitration provision applies to "ANY DISPUTE REGARDING THE VALIDITY, ENFORCEABILITY, OR SCOPE OF ANY PORTION OF THIS AGREEMENT (INCLUDING THE AGREEMENT TO ARBITRATE)." *See* Decl., Ex. 8, at p. 6. The Supreme Court "has consistently held that parties may delegate threshold arbitrability questions to the arbitrator, so long as the parties' agreement does so by clear and unmistakable evidence." *Wallrich v. Samsung Electronics Am., Inc.*, 106 F 4th 609,

9

620 (7th Cir. 2024) (internal quotations omitted). Thus, if a valid agreement exists, and if the agreement delegates the arbitrability issue to an arbitrator, the court cannot decide the arbitrability issue. *Id.*

When, as here, the AAA rules are incorporated in an arbitration agreement, that too is clear and unmistakable evidence of intent to delegate arbitrability to the arbitrator. In these circumstances, the Court is obligated to compel arbitration. *See, e.g., Nandorf, Inc. v. Applied Underwriters Captive Risk Assurance Co., Inc.*, 410 F. Supp. 3d 882, 888 (N.D. Ill. 2019); *Allscripts Healthcare, LLC v. Etransmedia Tech., Inc.*, 188 F. Supp. 3d 696, 701 (N.D. Ill. 2016).

Even if the Court were to decide scope (it should not), this dispute is covered by the arbitration agreement, which extends to "ANY DISPUTE THAT IN ANY WAY RELATES TO OR ARISES OUT OF THIS AGREEMENT," including "ANY DISPUTE REGARDING… ANY EQUIPMENT, PRODUCTS AND SERVICES YOU RECEIVE FROM US" and "ALLEGED PERSONAL INJURY OR INVASION OF PRIVACY RELATING TO SUCH PRODUCTS OR SERVICES." *See* Decl., Ex. 8 at p. 6 (emphasis in original). The Seventh Circuit reads "both 'arising out of' and 'relating to' broadly," *Gore*, 666 F.3d at 1033, and has said that "'arising out of' reaches all disputes having their origin or genesis in the contract, whether or not they implicate interpretation or performance of the contract *per se*." *Id.* (internal quotation omitted). Thus, the Seventh Circuit characterizes "arising out of" or "relating to" language as "extremely broad and capable of an expansive reach." *Id.* (quoting *Kiefer Specialty Flooring, Inc. v. Tarkett, Inc.*, 174 F.3d 907, 909 (7th Cir. 1999)). Such broad language creates a presumption of arbitrability which requires that any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration. *Id.*

The claims at issue arise from the Agreement because Plaintiffs directly link them to the wireless services, by alleging that they arise from their enrollment in Voice ID for their Verizon

10

Wireless accounts, and using Verizon Wireless service to call Verizon Wireless "while Voice ID was active on [their] account[s]." *See* Compl., ¶¶ 50-61. Courts around the country have compelled arbitration in similar circumstances. *See, e.g., Sidney v. Verizon Commc'ns,* No. 17CV1850RJDRLM, 2018 WL 1459461, at *2 (E.D.N.Y. Mar. 23, 2018) (compelling arbitration in a class action against Verizon Wireless arising out of the fraudulent purchase of a cell phone and service on plaintiff's cell phone account); *Asa v. Verizon Commc'ns, Inc.*, No. 1:17-CV-256, 2017 WL 5894543, at *3 (E.D. Tenn. Nov. 29, 2017) (explaining court could "easily conclude" that plaintiff's Telephone Consumer Protection Act ("TCPA") and negligence claims against Verizon Wireless involving lack of access to his online account "arise from the 'equipment, products and services' he received," and therefore were subject to arbitration); *Campbell v. Verizon Wireless, LLC*, No. CIV.A. 14-0517-WS-N, 2015 WL 416484, at *9 (S.D. Ala. Jan. 29, 2015) (compelling arbitration of Verizon Wireless customer's claims for violations of the Fair Debt Collection Practices Act and Fair Credit Reporting Act).[5]

      Given the "extremely broad" and "expansive" nature of the arbitration provision in the Agreement, and the unambiguous intent of the parties to resolve "ANY DISPUTE THAT IN ANY WAY RELATES TO OR ARISES OUT OF THIS AGREEMENT," including "ANY DISPUTE REGARDING… ANY EQUIPMENT, PRODUCTS AND SERVICES" received by Plaintiffs from Verizon Wireless, there is no question that the parties' agreement to arbitrate

---

[5] Although at least two courts have declined to compel claimants to arbitrate with Verizon, those cases are distinguishable because they concern prior versions of the arbitration clause; not the provision included in the August 22, 2024 Agreement. *See MacClelland v. Cellco Partnership*, 609 F. Supp. 3d 1024 (N.D. Cal. July 1, 2022); *Achey v. Cellco Partnership*, 475 N.J. Super. 446 (App. Div. May 1, 2023). The arbitration provision applicable to this case is materially different from those analyzed in *McClelland* and *Achey*, including because it applies a different bellwether process, expressly tolls the statute of limitations during bellwether proceedings, and does not expressly prohibit extrinsic evidence; moreover, it contains other provisions favorable to the consumer, such as the provisions requiring Verizon to bear most of the costs of arbitration. Mr. Parker and Mr. Doyle were notified of these changes in their monthly billing statements (Decl., ¶¶ 17-18, 30), and agreed to them by continuing to use the service. *Id.*

11

covers Plaintiffs' BIPA claims. To the extent Plaintiffs resist arbitration on the grounds of enforceability, that too is an issue to be decided by an arbitrator and not the court. *See* Decl., Ex. 8 at p. 6 (Reserving for the arbitrator "ANY DISPUTE REGARDING THE VALIDITY, ENFORCEABILITY OR SCOPE OF ANY PORTION OF [THE CUSTOMER] AGREEMENT (INCLUDING THE AGREEMENT TO ARBITRATE)."). Accordingly, this Court should stay this action and compel Plaintiffs to arbitrate their claims on an individual basis.

### D. Plaintiffs' Class Claims Cannot Proceed.

The Court must dismiss Plaintiffs' putative class action claims and order Plaintiffs to arbitrate their claims individually. As the Supreme Court held in *Stolt-Nielsen S.A.*, 559 U.S. at 664, arbitration "is a matter of consent"; courts cannot force parties into class proceedings to which they did not agree. *Id.* Verizon "may not be compelled … to submit to class arbitration unless there is a contractual basis for concluding that the party agreed to do so." *Id.* at 684.

Far from agreeing to class arbitration, Verizon's Agreement expressly prohibits class claims. *See* Decl., Ex. 8, at p. 6 ("**THIS AGREEMENT DOESN'T ALLOW CLASS OR COLLECTIVE ARBITRATIONS**…") (emphasis in original); *Id.*, at p. 8 ("**IF FOR ANY REASON A CLAIM PROCEEDS IN COURT RATHER THAN THROUGH ARBITRATION**… **NO ACTION WILL BE BROUGHT ON A CLASS OR COLLECTIVE BASIS**…") (emphasis in original).

As set forth above, the Court should enforce the arbitration provision—including the prohibition against class actions—according to its terms. *See, e.g., Italian Colors Rest.*, 570 U.S. at 233-34 (FAA does not permit courts to invalidate arbitration agreements because they do not permit class arbitration of federal claim); *DIRECTV, Inc. v. Imburgia*, 577 U.S. 47, 58 (2015) (FAA "pre-empts and invalidates" state law that would make a class action waiver unconscionable in consumer contract of adhesion); *Concepcion*, 563 U.S. at 336, 352 (same); *see*

12

*also Sherman*, 2012 WL 1021823, at *4 (fact that arbitration provision limited internet service provider's class action liability did not diminish its enforceability); *Crandall*, 2008 WL 2796752, at *5 (enforcing class action waiver in wireless service agreement). Settled Supreme Court precedent prohibits Plaintiffs from pursuing class claims in this Court or in arbitration.

### E. The Claims Against VCI Should be Dismissed.

VCI is not a proper party to this action. VCI is a holding company that indirectly wholly owns Verizon Wireless and provides no services or products to Verizon Wireless customers. Decl., ¶ 43. As Plaintiffs' Complaint acknowledges, Plaintiffs purchased the subject cellular phone products and services from Verizon Wireless, Compl., ¶ 15, and Plaintiffs' contracts are with Verizon Wireless. *See* Decl., Ex. 8; *see also id.*, Exs. 2, 5, 9-10. It is well-settled under Illinois law that "holding companies and subsidiaries are separate legal entities," *Hughey V. Hoffman Rosner Corp.*, 109 Ill. App. 3d 633, 638 (1982), and a holding or parent company cannot be held liable for the acts of a wholly owned subsidiary, unless the legal separateness of the two entities has been disregarded, *Joiner v. Ryder Sys., Inc.*, 966 F. Supp. 1478, 1483 (C.D. Ill. 1996). "To disregard that well-established principle, a plaintiff has a substantial burden to overcome." *Id.* (internal quotations omitted). Here, Plaintiffs have not alleged a single fact demonstrating that VCI and Verizon Wireless disregarded their legal separateness, much less carried its "substantial burden." Consistent with the contemporaneously-filed motion to dismiss, Plaintiffs' claims against VCI should be dismissed. *See, e.g., Asa*, 2017 WL 5894543, at *1 (substituting Verizon Wireless as defendant for VCI in consumer protection action, because VCI is "an inactive corporation that provided no services to the plaintiff").

Regardless, even if VCI could be held liable for the conduct of Verizon Wireless (it cannot), Plaintiffs' claims against VCI would be subject to the arbitration provision in the Agreement. *See* Decl., ¶ 44 ("This Agreement isn't for the benefit of any third parties except our

13

parent companies…"). Accordingly, if the Court does not dismiss the claims against VCI outright, Plaintiffs should be compelled to arbitrate those claims on an individual basis.

### F. This Action Should Be Stayed Pending Arbitration.

FAA Section 3 requires a court, upon the application of one of the parties, to stay any court proceeding regarding any arbitrable issue while the issue is being arbitrated. 9 U.S.C. § 3. The Supreme Court has recently confirmed that "[w]hen a district court finds that a lawsuit involves an arbitrable dispute and a party has requested a stay of the court proceeding pending arbitration, § 3 compels the court to stay the proceeding." *Smith v. Spizzirri*, 601 U.S. 472, 479 (2024). Accordingly, the Court should stay this action pending arbitration.

## V. CONCLUSION

For the foregoing reasons Verizon Wireless and VCI respectfully request that this Honorable Court enter an order: compelling Plaintiffs to arbitrate their claims against Verizon Wireless on an individual basis; dismissing the claims against VCI or, in the alternative, compelling Plaintiffs to arbitrate those claims on an individual basis; and, staying this action during the pendency of arbitration.

November 8, 2024

Respectfully submitted,

BARON HARRIS HEALEY

By: */s/ Steven L. Baron*
Steven L. Baron (ARDC # 6200868)
150 South Wacker Drive, Suite 2400
Chicago, Illinois 60606
Telephone: (312) 741-1027
E-Mail: sbaron@bhhlawfirm.com

HUNTON ANDREWS KURTH LLP
By: */s/ Ann Marie Mortimer*

Ann Marie Mortimer (Pro hac vice pending)
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627
Telephone: (213) 532-2000
E-Mail: amortimer@HuntonAK.com

By: */s/ Tara L. Elgie*

Tara L. Elgie (IL General Bar No. 48259)
1445 Ross Avenue, Suite 3700
Dallas, Texas 75202
Telephone: (214) 979-8212
E-Mail: telgie@HuntonAK.com

*Attorneys for Cellco Partnership d/b/a Verizon Wireless, and Verizon Communications Inc.*

15

## CERTIFICATE OF SERVICE

The undersigned, an attorney, hereby certifies that a true and correct copy of the foregoing has been served on November 8, 2024 via the Court's CM/ECF system on all counsel of record who have consented to electronic service.

By: */s/ Steven L. Baron*
Steven L. Baron
150 South Wacker Drive, Suite 2400
Chicago, Illinois 60606
Telephone: (312) 741-1027
sbaron@bhhlawfirm.com