UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Thelton George Parker, Jr., and Steven Doyle, *Individually and on Behalf of All Others Similarly Situated*,<br><br>                       Plaintiffs,<br>v.<br>Verizon Communications Inc. and Cellco Partnership d/b/a Verizon Wireless,<br><br>                       Defendants. | 1:24-cv-08436<br>Hon. Jorge L. Alonso |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS BY VERIZON COMMUNICATIONS INC. AND CELLCO PARTNERSHIP D/B/A VERIZON WIRELESS PURUSUANT TO FED. R. CIV.P. 12(b)(6) AND 12(b)(2)**

**I.    INTRODUCTION**

Thelton George Parker, Jr. and Steven Doyle ("Plaintiffs") agreed to arbitrate any disputes arising from their wireless service, so the court should dismiss the claims at issue in their deficient putative class action complaint (the "Complaint") for that reason alone.[1] Plaintiffs also fail to state plausible claims under Illinois Biometric Privacy Act ("BIPA") §§15(b) and (e) as to Cellco Partnership, and the court lacks personal jurisdiction over Verizon Communications Inc. ("VCI"), so Plaintiffs' claims should be dismissed under Fed. R. Civ. P. 12(b)(6) and 12(b)(2).

The crux of Plaintiffs' Complaint is the allegation that VCI and Cellco Partnership d/b/a Verizon Wireless ("Verizon") violated BIPA by collecting customer voiceprints through the Voice ID service without providing proper disclosures or obtaining informed written consent. But Verizon does indeed comply with BIPA, as it provides the required disclosure and obtains written

---

[1] As discussed in the Motion to Compel, all merits arguments including as to the validity and enforceability of the arbitration agreement are reserved for the arbitrator. Therefore, the Court need not— and should not—reach the merits raised in this Motion to Dismiss. Nevertheless, Verizon is filing it to preserve substantive arguments without waiver of its right to arbitration which is expressly preserved.

1

consent from the customer before collecting any biometric data.

As part of its disclosures, Verizon includes an embedded link of Frequently Asked Questions ("FAQs") at each step of the Voice ID enrollment flow regarding the collection and use of biometric information. *See e.g.*, Compl. ¶¶ 35-37. When the customer initiates the enrollment process, Verizon sends a text message directing them to the FAQs. *See e.g.*, Compl. ¶¶ 35-37 ("… To learn more about Voice ID, visit verizon.com/voiceid…."). While the Complaint repeatedly references and quotes from the FAQs, it misleadingly fails to acknowledge those portions which demonstrate Verizon's full compliance with BIPA. *See id.* at ¶¶ 32-34, 39.

Plaintiffs' attempt to manufacture a class action does not "plausibly give rise to an entitlement to relief" where the unabridged Voice ID enrollment process, including the full FAQ text, demonstrates Verizon fully complied with BIPA. *See Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009); Ninete Dec. at ¶ 45, Ex. 11.[2] The Court can and must consider the disclosures made in the FAQs because they are referenced in, and central to, the Complaint. *See Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687, 690 (7th Cir. 2012). The FAQs inform customers that their biometric data (voiceprint) is being collected, the reason for collection, and the length of time the data will be stored. Ninete Dec. at ¶ 45, Ex. 11. These disclosures are made available to the customer through an embedded hyperlink ***three*** separate times before Verizon collects biometric information. Compl. ¶¶ 35-38. Verizon also obtains a written release by electronic signature before collecting any biometric data. Compl. ¶ 36 (showing electronic signature capture flow). Considering the allegations as a whole (including the FAQs), Plaintiffs do not plausibly allege a failure to obtain BIPA consent. This warrants dismissal under Fed. R. Civ. P. 12(b)(6). *See Iqbal*,

---

[2] Verizon provides the full FAQs for completeness and because Plaintiffs repeatedly reference and cite them in their Complaint. *See* Ninete Dec. at ¶ 45, Ex. 11.

556 U.S. at 679.

Plaintiffs' Section 15(e) claim amounts to a bare allegation that Verizon fails to protect customers' biometric data. Compl. ¶¶ 84, 85. Conclusions without well pled facts fall short of *Iqbal/Twombly's* plausibility standards and the minimum requirements of Fed. R. Civ. P. 12(b)(6). *See Iqbal*, 556 U.S. at 679. This failure constitutes grounds to dismiss that claim.

Finally, all claims against VCI must be dismissed under 12(b)(2) because Plaintiffs allege no facts specific to VCI or as to its contacts in Illinois; nor could they, as VCI is a holding company and no Illinois connection exists in this case.[3]

## II. BACKGROUND

### A. Illinois Biometric Privacy Act

BIPA section 15(b) requires private entities to provide Illinois consumers written disclosures and obtain a written release before collecting biometric information, stating:

> (b) No private entity may collect, capture, purchase, receive through trade, or otherwise obtain a person's or a customer's biometric identifier or biometric information, unless it first:
> (1) informs the subject or the subject's legally authorized representative in writing that a biometric identifier or biometric information is being collected or stored;
>
> (2) informs the subject or the subject's legally authorized representative in writing of the specific purpose and length of term for which a biometric identifier or biometric information is being collected, stored, and used; and
>
> (3) receives a written release executed by the subject of the biometric identifier or biometric information or the subject's legally authorized representative.

740 Ill. Comp. Stat. Ann. 14/15(b).

BIPA Section 15(e) requires private entities to protect biometric information, stating:

"A private entity in possession of a biometric identifier or biometric information shall:

---

[3] Even if the Complaint is not dismissed on these bases, the class allegations must be dismissed because they are precluded by the Customer Agreement. *See* Section IV, D, *infra*.

3

> (1) store, transmit, and protect from disclosure all biometric identifiers and biometric information using the reasonable standard of care within the private entity's industry; and
>
> (2) store, transmit, and protect from disclosure all biometric identifiers and biometric information in a manner that is the same as or more protective than the manner in which the private entity stores, transmits, and protects other confidential and sensitive information."

740 Ill. Comp. Stat. Ann. 14/15(e).

Plaintiffs' own allegations, when viewed in conjunction with the complete disclosures Verizon provided to the Plaintiffs, demonstrate Verizon's compliance with Section 15(b). As discussed above, the Plaintiffs' allegations as to 15(e) fail to plausibly state a claim because they are conclusory and simply mirror the statute.

### B. Verizon Provides BIPA Compliant Disclosures and Obtains Written Consent Prior to Obtaining Biometric Data.

Plaintiffs are two Verizon customers who enrolled in Verizon's Voice ID Program (Compl. ¶¶ 6, 8)—an optional Verizon service that uses a customer's voiceprint to help authenticate the customer's account when they call Verizon. *Id.* at ¶ 33.

When customers voluntarily initiate enrollment in Voice ID, they receive a text message from Verizon that includes links to: (1) Voice ID FAQs containing Verizon's policy of collection, retention, storage, and deletion of the customer's voiceprint, and (2) a webpage where they must consent to complete the enrollment in Voice ID. *Id.* at ¶¶ 35-37. The linked Voice ID FAQs inform customers, among other things, of the following:

> **How does Voice ID work?**
>
> When you enroll in Voice ID, we'll use a recording of your voice to create a unique digital template or voiceprint. When you call us, Voice ID compares your voice to the voiceprint stored on your account. Verizon encrypts your identity and Voice ID voiceprint before storing them. You can un-enroll in Voice ID at any time.

*See* Ninete Dec. at ¶ 45, Ex. 11. In addition to informing customers that their voiceprint is being collected and stored, the FAQs also tell them how long it will be stored:

> **How long does Verizon keep my voiceprint?**
>
> Your voice print is saved on your account as long as you're a Verizon customer. If you de-enroll from Voice ID or close your Verizon account, we delete your voiceprint within 24 hours.

*Id.* Verizon also informs customers that it stores the voiceprint because it is "used as part of Verizon's multi-factor authentication system." *Id.*

When Verizon provides its FAQs regarding use, collection, retention, and deletion of a customer's voiceprint, it provides the customer a link to begin the enrollment process in Voice ID. *See* Compl. ¶¶ 35-38. Once the customer clicks the link, the customer goes to a webpage and must consent through electronic signature before Verizon collects any biometric data. *Id.* at ¶ 36. The webpage states in large, bold font "**Consent to enroll in Voice ID**." *Id.* The customer again gets the link to Verizon's written FAQs regarding the collection, use, storing and retention procedures of the customer's voiceprint. *Id.* The customer is then asked, "Do you want to grant consent to enroll in Voice ID?" *Id.* The customer is given two choices: "Enroll in Voice ID" or "Deny Request." *Id.* To enroll, the customer must affirmatively click both the "Enroll in Voice ID" option and "Submit." *Id.* at ¶ 37. Once enrolled, the customer is taken to a webpage and again provided a link to Verizon's FAQs. *Id.* Only after receiving three separate links to Verizon's Voice ID and biometric disclosures, and consenting in writing by affirmatively clicking the button on the consent webpage, does Verizon obtain the customer's voiceprint. *Id.* at ¶ 38.

### III. LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss, "a [C]omplaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (citation omitted). "[A] formulaic recitation of the elements of a cause of action will

5

not do," *Bell Atl. Corp v. Twombly*, 550 U.S. 544, 555 (2007), nor will "naked assertions devoid of further factual enhancement," *Iqbal*, 556 U.S. at 678. The court is not "bound to accept as true a legal conclusion couched as a factual allegation." *Twombly* at 555. If there are well-pleaded factual allegations, the court must "assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679.

In deciding a Motion to Dismiss, the Court "must consider…documents incorporated into the complaint by reference..." *Tellabs, Inc. v. Makor Issues & Rts.,* 551 U.S. 308, 322 (2007). In the 7th Circuit, "it is well settled that in deciding a Rule 12(b)(6) motion, a court may consider 'documents attached to a motion to dismiss ... if they are referred to in the plaintiff's complaint and are central to his claim.'" *Brownmark,* 682 F.3d at 690 (citations omitted). The attached document should also be concededly authentic. *Tierney v. Vahle,* 304 F.3d 734, 738 (7th Cir.2002)). "If a plaintiff mentions a document in his complaint, the defendant may then submit the document to the court without converting defendant's 12(b)(6) motion to a motion for summary judgment." *Id.* Here, the Complaint repeatedly references and quotes from the Voice ID FAQs. Compl. ¶¶ 33-34, 41. Plaintiffs, however, fail to provide the full FAQ text, which is central to their complaint (e.g., the adequacy of the BIPA required disclosures). *Id.* at ¶¶ 35-38. *Brownmark* "prevents a plaintiff from 'evad[ing] dismissal under Rule 12(b)(6) simply by failing to attach to his complaint a document that prove[s] his claim has no merit.'" *Id.* (quoting *Tierney* 304 F.3d at 738 (7th Cir.2002)). Plaintiffs likewise cannot evade dismissal by omitting the full text of the FAQs.

IV. ARGUMENT

A. Plaintiffs Must Individually Arbitrate Their Claims.

As outlined in the Defendants' contemporaneously filed Motion and Supporting Memorandum to Compel Arbitration, Plaintiffs must individually arbitrate their claims in

accordance with the binding arbitration and class-action waiver in the My Verizon Wireless Customer Agreement. For this reason alone, the Complaint should be dismissed.

### B. Plaintiffs' Count 1 Fails To State a Claim Under Section 15(b) of BIPA.

Count 1 is rooted in the baseless legal conclusion that Verizon violated BIPA Section 15(b) by failing to make the BIPA disclosures and obtain a written release when Plaintiffs enrolled in Voice ID. Plaintiffs fail to state a plausible claim because their allegations omit linked content provided to them in each step of the Voice ID enrollment process. When read together with the full text of the FAQ, the allegations demonstrate Verizon unequivocally complied with the statute.

> ***i. Verizon informed Plaintiffs of the purpose for collecting the biometric data and the length of term that the biometric information was being collected, stored, and used.***

The Complaint alleges that Voice ID customers were not: "informed in writing that a biometric identifier and/or biometric information were being collected or stored" (Compl. ¶ 40), nor "informed in writing of the specific purpose and length of term for which the biometric identifier or biometric information was being stored" (Compl. ¶ 41). Plaintiffs conveniently ignore the linked FAQs included in the Voice ID enrollment process. A cursory look at the Voice ID enrollment process as alleged and the full text of the FAQs (that Plaintiffs omit) demonstrates compliance with the statute. As Plaintiffs concede, a consumer who elects to enroll in Voice ID receives a text message. It includes linked FAQs that expressly and unambiguously state:

- Voice ID uses your voice to create a biometric voice print to verify your identity when you call Verizon, but only with your permission….
- When you enroll in Voice ID, we'll use a recording of your voice to create a unique digital template or voiceprint…
- When you call us, the Voice ID compares your voice to the voiceprint stored on your account….
- If you've saved a Voice ID with your account, Verizon uses it to help verify your identity when you call us. We may also use a Voice ID for other uses described in our privacy policy.

- Your voice print is saved on your account as long as you're a Verizon customer. If you de-enroll from Voice ID or close your Verizon account, we delete your voiceprint within 24 hours.

*See* Ninete Dec. at ¶ 45, Ex. 11

These disclosures track Section 15(b)(1) and (2)'s requirements. Verizon informs the customer in writing that a biometric identifier (their voiceprint) is being collected and stored, satisfying Section 15(b)(1). *See* 740 Ill. Comp. Stat. Ann. 14/15(b)(1); Ninete Dec. at ¶ 45, Ex. 11. Likewise, Verizon satisfies Section 15(b)(2) by informing the customer of the purpose for collecting the voiceprint ("to help verify your identity when you call us") and the length of the term for which the biometric information is stored ("Your voice print is saved on your account as long as you're a Verizon customer. If you de-enroll from Voice ID or close your Verizon account, we delete your voiceprint within 24 hours"). *See* 740 Ill. Comp. Stat. Ann. 14/15(b)(2); Ninete Dec. at ¶ 45, Ex. 11.

The FAQs constitute sufficient disclosure under BIPA. *See, e.g., Gunderson v. Amazon.com, Inc.*, No. 19-cv-05061, 2023 WL 11824844, *4 n.3 (N.D. Ill. Oct. 31, 2023) (finding plaintiffs "barely" alleged a claim sufficient to survive a motion to dismiss by alleging that "nowhere in its disclosures does Amazon inform an enrollee that it is collecting and capturing the enrollee's voiceprint, a biometric identifier"). In *Gunderson*, the Court did not find Amazon's disclosures insufficient because it provided the plaintiffs links to access them, nor did it take issue with disclosures being provided by hyperlinked FAQs. There, plaintiffs' 15(b) claim survived Amazon's Motion to Dismiss—and "barely" survived, at that—only because the disclosures did not make clear that Amazon was collecting a biometric identifier as required by BIPA. Unlike Amazon's disclosures in *Gunderson*, Verizon's disclosures track BIPA's language: Verizon informs enrolling Voice ID customers that "Voice ID uses your voice to create a biometric voice

8

print to verify your identity when you call Verizon, but only with your permission…." Ninete Dec. at ¶ 45, Ex. 11.

BIPA's text contains no restrictions or mandates as to how one must provide disclosures to individuals whose biometric information is being collected—only that Verizon must (1) inform those customers that it is collecting biometric information and (2) inform the customers of the specific purpose and length of term for which the biometric identifier or information is to be collected or stored. 740 Ill. Comp. Stat. Ann. 14/15(b)(1) and (2). The cornerstone of statutory interpretation is that statutes are to be given their plain meaning, and courts cannot read additional requirements into statutes which are clear. *Ferguson v. Bill Berger Associates, Inc.*, 704 N.E.2d 830 (Ill. App. Ct. 1998) ("[W]hen the language is plain and unambiguous, courts cannot add exceptions, limitations or otherwise amend or alter a statute[.]"). Plaintiffs are attempting to impose extra-statutory requirements on Verizon, and want the Court to read into BIPA's statutory language a specific method for providing the required disclosures to customers, where no such specific method exists. This is impermissible. BIPA sets out the requirements for disclosure— there is no need for the Court to look any further than the statutory text itself.

That Plaintiffs may not have clicked on the disclosures is irrelevant to whether Verizon complied with BIPA's disclosure requirements. Plaintiffs had an opportunity to review those disclosures *three separate times* before providing any biometric data, and it is both common sense and well-established under Illinois law that a party's decision not to read terms provided and disclosed to them is not the fault of the providing party. *See Ambrosius v. Chicago Athletic Clubs, LLC*, 203 N.E.3d 239, 250 (Ill. Ct. App. 2021) ("the fact that plaintiffs may not have clicked on the hyperlink or read through the terms of service before signing up for the rewards program does not preclude the formation of a contract."); *see also*, *e.g.*, *Fteja v. Facebook, Inc.*, 841 F.Supp.2d

9

829, 840 (S.D.N.Y. 2012) ("[plaintiff] was informed of the consequences of his assenting click and he was shown, immediately below, where to click to understand those consequences"). Here too, Plaintiffs were informed of the consequences of their assenting radio button clicks: Verizon would create a Voice ID associated with their account, and Plaintiffs were shown—via text message, via a link on the enrollment page, and immediately post-enrollment, before any biometric data was provided—where to click to understand those consequences. Whether or not Plaintiffs failed to look at and read the FAQs was the Plaintiffs' choice, not the fault of Verizon. *See id*. ("What is the difference between a hyperlink and a sign on a bin of apples saying 'Turn Over for Terms'[?] . . . clicking the hyperlinked phrase is the twenty-first century equivalent[.] In both cases, the consumer is prompted to examine terms of sale that are located somewhere else.").

### ii. Verizon received a written release from the customers prior to obtaining any biometric data.

Plaintiffs incorrectly allege "[a]t no point during the enrollment process did [Verizon] require a customer to execute and send to them a written release, based on informed consent." Compl. ¶ 42. But Plaintiffs' own allegations demonstrate that to enroll they had to click the radio button "Enroll in Voice ID" and then "Submit" (Compl. ¶¶ 36-37) and thereby provided an electronic signature.

Section 15(b)(3) requires a "written release" executed by the customer prior to obtaining any biometric data. *See* 740 Ill. Comp. Stat. Ann. 14/15(b)(3). Prior to receiving ***any*** biometric data from the potential Voice ID customer, Verizon does just that. When a customer indicates they want to enroll in Voice ID, Verizon sends a direct link that mandates the customer give their affirmative electronic signature before Verizon has any access to their biometric data. Compl. ¶ 36. The link sends the customer to a page entitled "**Consent to enroll in Voice Id.**" *Id.* At this same page, the customer is again provided a link to the disclosures regarding Voice ID and their

10

biometric data. *Id.* The customer confirms their consent by clicking the radio button and hitting "Submit." *Id.* at ¶ 36-37. Despite this unequivocal consent, Plaintiffs contend Section 15(b)(3) is not satisfied. In doing so, they ignore the plain language of BIPA.

Under BIPA, "electronic signature" is defined as "…an electronic sound, symbol, or process attached to or logically associated with a record and executed or adopted by a person with the intent to sign the record." *See* 740 Ill. Comp. Stat. Ann. 14/10.. The Voice ID process falls squarely within this definition because it is a "process…logically associated" with consenting to Voice ID and the action of clicking on the radio button that states "Enroll in Voice ID" and hitting "Submit" is a form of adoption by the customer signifying an intent to sign the record. *See* Compl. ¶ 36; 740 Ill. Comp. Stat. Ann. 14/10. Verizon's process of clicking a radio button and "submitting" that selection suffices to assent to the terms of an agreement. "In general, an online prompt to read terms that are available at a hyperlink, and manifest assent thereto by clicking on a box, can be sufficient to form a contract." *Ambrosius,* 203 N.E.3d 239 at 250.

As such, Plaintiffs consented in writing—signing via the radio button—to collection of their biometric data after being provided FAQs informing them of the BIPA required disclosures. Plaintiffs' 15(b) claim must be dismissed as they fail to "plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679.

## C. Plaintiffs' Count II Fails to State a Claim Under Section 15(e) of BIPA.

Plaintiffs' Section 15(e) claim, which rests on mere boilerplate recitation of the statutory elements and a handful of speculative, irrelevant allegations, should be dismissed pursuant to Rule 12(b)(6). *See Twombly,* 550 U.S. 555. The crux of Plaintiffs' 15(e) claim is that because Verizon has suffered from data breaches in the past (none of which involved biometric data), it *ipso facto* breached the standard of care as it relates to the storage of Plaintiffs' biometrics. Compl. ¶¶ 47-

11

49, 82-87. Plaintiffs fail to plead any connection between a historical breach and the disclosure of *any* biometric data (let alone biometric data related to Voice ID). Nor have Plaintiffs alleged how Verizon failed to comply with the industry standard of care in protecting biometric data. Without more, the 15(e) claim demands dismissal. *See Twombly,* 550 U.S. 555.

Plaintiff's baseless reliance on unrelated data breaches and parroting of the statutory language for their 15(e) claim have been summarily rejected by Courts. In *Delgado v. Meta Platforms,* a BIPA putative class action involving customer voiceprints, the court rejected an identical 15(e) claim that was predicated on the fact that Meta had been the subject of previous cyber-attacks. *Delgado* v. *Meta Platforms*, 718 F.Supp.3d 1146, 1161 (N.D. Cal. 2024) (applying Illinois law). Plaintiffs in *Delgado* asserted nearly the same allegations as those before this Court; primarily, that since there were previous data breaches at Meta, it followed that Meta "failed to store, transmit, and protect from disclosure" their customer voiceprints. *Id.* The court deemed these allegations as "conclusory," stating "[t]he complaint provides no allegations regarding how Meta stores biometric data or how its practices fail to comply with the reasonable standard of care." *Id; see also McClaine v. DX Enterprises*, 2024 WL3860971 at *4 (dismissing 15(e) claim where complaint ""'speculate[d] as to what the reasonable standard of care is within the industry, and then merely recite[d], the Defendant's obligations under BIPA.").

This court should likewise reject Plaintiffs' speculative 15(e) claims. Plaintiffs' conclusory allegations—which mirror those in *Delgado* and *McClaine*—similarly fail to put Verizon on notice of the challenged conduct. Without doing so, Plaintiffs' 15(e) claim cannot survive a Rule 12(b)(6) challenge and must be dismissed.

### D. Plaintiffs' Class Allegations are Barred by the Class Action Waiver.

Even if Plaintiffs are not compelled to arbitration or their claims dismissed, Plaintiffs are

still precluded by the Customer Agreement from bringing a class action. Plaintiffs are both current Verizon customers. Compl. ¶¶ 50, 56; Ninete Decl. at ¶¶ 5-6, 19-20. At the time of their first purchase, they each executed Service Customer Receipts ("SCR") agreeing to abide by the terms of the then-current Customer Agreement. *Id.*, ¶¶ 5-8 (Parker); *Id.*, ¶¶ 18, 20-22 (Doyle). The dispute is governed by the August 22, 2024 Customer Agreement in effect when Plaintiffs filed the Complaint. *See* Ninete Dec. at ¶ 31, Ex. 8. It contains an unequivocal class action waiver: "IF FOR ANY REASON A CLAIM PROCEEDS IN COURT RATHER THAN THROUGH ARBITRATION … **NO ACTION WILL BE BROUGHT ON A CLASS OR COLLECTIVE BASIS**." *Id.* at ¶ 39 (emphasis added).

As a threshold matter, the Court can and should consider the Customer Agreement in evaluating this motion. *See Brownmark,* 682 F.3d at 690. Plaintiffs reference they are Verizon customers (Compl. ¶¶ 50-56) and the Customer Agreement is central to their putative class action because it explicitly forbids it. *See Brownmark,* 682 F.3d at 690.

Illinois courts enforce class action waivers outside the arbitration context. *Niiranen v. Carrier One, Inc.*, No. 20-CV-06781, 2022 WL 103722, at *6–8 (N.D. Ill. Jan. 11, 2022) (enforcing a class action waiver in an employment agreement that had no arbitration provision, but prohibited participation in "any class action"). Even where class action waivers are found in arbitration agreements, courts find that the "two contract terms are conceptually distinct." *Fischer v. Instant Checkmate LLC*, 19-cv-4892, 2022 WL 971479, at *4 (N.D. Ill. Mar. 31, 2022) (citations omitted). Even if the Arbitration Agreement is invalid, the Court may separately enforce the class action waiver, particularly where, as here, the class action waiver unequivocally applies to *both* class arbitration and class actions. *Id.* at *4 (noting "the effect of the…class waiver depends on

13

whether its language, considered in context, waives class arbitration, class action litigation, or both."); *see also Horton v. Dow Jones & Co.,* 804 F. App'x 81 (2d Cir. 2020).

Verizon's arbitration agreement (and the waiver on class arbitrations) is distinct and separate from the class action waiver. *See* Ninete Dec. at ¶¶ 31, 36, 37, 38, 39, Ex. 8. The waiver is not contingent on the case being compelled to arbitration, and thus, is "conceptually distinct" from the class arbitration provision. *See Fischer*, 2022 WL 971479, at *4. The class action waiver is independently enforceable and the Court should dismiss Plaintiffs' class claims.

### E. VCI Should be Dismissed for Lack of Personal Jurisdiction.

#### i. *VCI Is Not Subject to General Personal Jurisdiction in Illinois.*

To demonstrate that this Court can exercise general personal jurisdiction over VCI, Plaintiffs must establish that VCI's contacts with Illinois are "so 'continuous and systematic' as to render [it] essentially at home" here. *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S. Ct. 2846, 2851 (2011). In all but the "exceptional" case, a company is "essentially at home" only in the state where it is incorporated and the state where it operates its principal place of business. *Goodyear*, 131 S. Ct. at 2854; *Daimler AG v. Bauman* 134 S. Ct. 746, 761 n.19 (2014).[4]

VCI is a holding company that indirectly wholly owns Verizon Wireless. It is incorporated in the State of Delaware with its principal place of business in New York. Ninete Decl., ¶ 43.[5] It provides no services or products. *Id.* Plaintiffs allege no "exceptional" circumstances present in

---

[4] In *Daimler,* the Supreme Court noted only one "exceptional" case where general jurisdiction was held to lie outside the state of incorporation or principal place of business—and, even then, only because World War II had forced the company at issue to relocate and make "Ohio … the corporation's principal, if temporary, place of business." 134 S. Ct. at 761, n. 19 (citing *Perkins v. Benguet Consol. Min. Co.*, 342 U.S. 437 (1952)).

[5] The Court may consider affidavits and other competent evidence submitted by the parties when evaluating personal jurisdiction. *See Purdue Research Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003)

this case establishing that VCI is essentially "at home" in Illinois. *Daimler*, 134 S. Ct. at 761 n.19. Rather, VCI is "at home" only in Delaware and New York, and subject to general personal jurisdiction in those states alone, not in Illinois.

### ii. *VCI Is Not Subject to Specific Personal Jurisdiction in this Case.*

A court can exercise specific jurisdiction, or case-linked jurisdiction, over an out-of-state defendant only for a claim that "arises out of or relates to" the defendant's contacts with the forum. *Daimler*, 134 S. Ct. at 754; *see also Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1028 (2021). Plaintiffs allege no facts specific to VCI and its contacts in Illinois; nor could they, as no such connection exists in this case.

Plaintiffs purchased the cellular phone products and services from Verizon Wireless, Compl. ¶ 15, and Plaintiffs' contracts are with Verizon Wireless – not VCI. *See* Ninete Dec. Ex. 14; *see also id.*, Exs. 2, 8. To the extent Plaintiffs are attempting to impute Verizon's contacts to VCI, it is well-settled that a holding or parent company cannot be held liable for the acts of a wholly owned subsidiary, unless the legal separateness of the two entities has been disregarded, *Joiner v. Ryder Sys., Inc.*, 966 F. Supp. 1478, 1483 (C.D. Ill. 1996)—which is not the case here. Plaintiffs have not alleged a single fact demonstrating that VCI and Verizon Wireless disregarded their legal separateness. Plaintiffs' claims against VCI should be dismissed. *See, e.g., Asa v. Verizon Commc'ns, Inc.*, No. 1:17-CV-256, 2017 WL 5894543, at *1 (E.D. Tenn. Nov. 29, 2017) (substituting Verizon Wireless as defendant for VCI because VCI is "an inactive corporation that provided no services to the plaintiff").

### V. CONCLUSION

For the foregoing reasons, Plaintiffs' putative class action must be dismissed. Even if this Court were not to dismiss based on the conclusory allegations, the Complaint must still be dismissed because the Customer Agreement between the parties precludes a class action.

November 8, 2024                                  Respectfully submitted,

                                                  BARON HARRIS HEALEY

                                                  By: */s/ Steven L. Baron*
                                                  Steven L. Baron (ARDC #6200868)
                                                  150 South Wacker Drive, Suite 2400
                                                  Chicago, Illinois 60606
                                                  Telephone: (312) 741-1027
                                                  E-Mail: sbaron@bhhlawfirm.com

                                                  HUNTON ANDREWS KURTH LLP
                                                  By: */s/ Ann Marie Mortimer*
                                                  Ann Marie Mortimer (Pro hac vice pending)
                                                  550 South Hope Street, Suite 2000
                                                  Los Angeles, California 90071-2627
                                                  Telephone: (213) 532-2000
                                                  E-Mail: amortimer@HuntonAK.com

                                                  By: */s Tara L. Elgie*
                                                  Tara L. Elgie (IL General Bar No. 48259)
                                                  1445 Ross Avenue, Suite 3700
                                                  Dallas, Texas 75202
                                                  Telephone: (214) 979-8212
                                                  E-Mail: TElgie@HuntonAK.com

                                                  *Attorneys for Cellco Partnership d/b/a Verizon Wireless and Verizon Communications Inc.*

## CERTIFICATE OF SERVICE

The undersigned, an attorney, hereby certifies that a true and correct copy of the foregoing has been served on November 8, 2024 via the Court's CM/ECF system on all counsel of record who have consented to electronic service.

By: */s/ Steven L. Baron*

Steven L. Baron
Baron Harris Healey (ARDC #6200868)
150 South Wacker Drive, Suite 2400
Chicago, Illinois 60606
Telephone: (312) 741-1027
sbaron@bhhlawfirm.com