**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS – EASTERN DIVISION**

| | |
|---|---|
| Thelton George Parker, Jr., and Steven Doyle, *Individually and on Behalf of All Others Similarly Situated*, | |
| Plaintiffs, | 24-cv-08436 |
| v. | Hon. Jorge L. Alonso |
| Verizon Communications Inc. and Cellco Partnership d/b/a Verizon Wireless, | Mag. Judge Sheila M. Finnegan |
| Defendants. | |

**REPLY BRIEF IN SUPPORT OF DEFENDANTS'**
**MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS**
**<u>PURSUANT TO THE FEDERAL ARBITRATION ACT</u>**

## <u>TABLE OF CONTENTS</u>

I.  PRELIMINARY STATEMENT.................................................................................1

II. ARGUMENT.........................................................................................................3

    A.  The Arbitrator, Not the Court, Must Decide Issues of Scope and
        Enforceability—Including Unconscionability. .......................................................3

        i.   The Parties Agreed To Arbitrate Disputes Regarding the Scope and
            Enforceability of the Arbitration Provision....................................................3

        ii.  Plaintiffs' Broad Attack on the Arbitration Provision Does Not
            Constitute an Attack on the Initial Delegation of Arbitrability. ..................5

        iii. Plaintiffs' Argument That The Delegation Clause Is
            Unconscionable Is Without Merit. ...............................................................8

    B.  Even If The Court Were To Decide Arbitrability, It Should Require
        Plaintiffs To Arbitrate Their Claims.....................................................................10

        i.   Plaintiffs Rely On An Outdated Agreement And Inapplicable Law. .........10

        ii.  The Specific Provisions Relied on Are Not Procedurally
            Unconscionable...........................................................................................12

        iii. The Specific Provisions Relied on Are Not Substantively
            Unconscionable...........................................................................................14

        iv.  The Class Action Waiver Is Not Substantively Unconscionable. ..............15

        v.   The Arbitrator Determines the Scope of the Arbitration Provision. ..........16

    C.  Plaintiffs Have Failed To Plead A Plausible BIPA Claim Against Verizon
        Communications Inc. ...........................................................................................17

III. CONCLUSION....................................................................................................18

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Acaley v. Vimeo, Inc.*,
464 F. Supp. 3d 959 (N.D. Ill. 2020) ....................................................................17

*Achey v. Cellco Partnership*,
475 N.J. Super. 446 (2023) ............................................................................7, 12

*AT&T Mobility LLC v. Concepcion*,
563 U.S. 333 (2011) .......................................................................................16

*Attix v. Carrington Mortg. Servs., LLC*,
35 F.4th 1284 (11th Cir. 2022) .......................................................................5, 8

*Boomer v. AT&T Corp.*,
309 F.3d 404 (7th Cir. 2002) ...........................................................................14

*Cabrera v. Verizon*,
No. CV 24-7780-ES-AME, 2024 WL 4818091 (D.N.J. Nov. 18, 2024) ...................4

*Cannon v. Armstrong Containers Inc.*,
92 F.4th 688 (7th Cir. 2024) ...........................................................................15

*Coinbase, Inc. v. Suski*,
602 U.S. 143 (2024)........................................................................................10

*Crandall v. AT&T Mobility, LLC*,
C.A. No. 07-750-GMP, 2008 WL 2796752 (S.D. Ill. 2008) .................................14

*Dixon v. Washington & Jane Smith Cmty.–Beverly*,
No. 17 C 8033, 2018 WL 2445292 (N.D. Ill. May 31, 2018) ...............................17

*Fahy v. Minto Dev. Corp.*,
722 F. Supp. 3d 784 (N.D. Ill. 2024) ...............................................................5, 10

*Fiala v. Bickford Senior Living Grp., LLC*,
2015 IL App (2d) 141160, 32 N.E.3d 80 (2015) .................................................16

*First Options of Chicago, Inc. v. Kaplan*,
514 U.S. 938 (1995).........................................................................................2

*Forby v. One Techs., LP*,
No. 15-0757-DRH-PMF, 2016 WL 11746078 (S.D. Ill. Mar. 25, 2016)................13

*Gilmer v. Interstate/Johnson Lane Corp.*,
    500 U.S. 20 (1991) ...................................................................................9

*Gore v. Alltel Commc'ns, LLC*,
    666 F.3d 1027 (7th Cir. 2012) ...............................................................17

*Granite Rock Co. v. Int'l Bhd. of Teamsters*,
    561 U.S. 287 (2010) .................................................................................4

*Heckman v. Live Nation Ent., Inc.*,
    120 4th 670, 692 (9th Cir. 2024) .....................................................14, 15

*Henry Schein, Inc. v. Inc. v. Archer & White Sales, Inc.*,
    586 U.S. 63 (2019) ......................................................................1, 2, 4, 8

*Holley-Gallegly v. TA Operating, LLC*,
    74 F.4th 997 (9th Cir. 2023) ...............................................................7, 8

*Hubbert v. Dell Corp.*,
    359 Ill. App. 3d 976 (2005) ...................................................................13

*Jackson v. Payday Fin., LLC*,
    764 F.3d 765 (7th Cir. 2014) .................................................................13

*K.F.C. v. Snap Inc.*,
    29 F.4th 835 (7th Cir. 2022) ....................................................................8

*Keeley & Sons, Inc. v. Zurich Am. Ins. Co.*,
    409 Ill. App. 3d 515, 947 N.E.2d 876 (2011) .......................................16

*Kemph v. Reddam*,
    2015 WL 1510797 (N.D. Ill. Mar. 27, 2015)......................................4, 5

*Kinkel v. Cingular Wireless, LLC*, 22d Ill. 2d 1, 26 ...................................13

*Koveleskie v. SBC Capital Markets, Inc.*,
    167 F.3d 361 (7th Cir.1999) ..................................................................10

*Lamps Plus, Inc. v. Varela*,
    139 S. Ct. 1407 (2019) ...........................................................................16

*Lee v. Uber Techs., Inc.*,
    208 F. Supp. 3d 886 (N.D. Ill. 2016) ..................................................4, 5

*MacClelland v. Cellco Partnership*,
    609 F. Supp. 3d 1024 (N.D. Cal. 2022) .............................................7, 11

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*,
    473 U.S. 614 (1985)..................................................................................9

*Nanberg v. 21 st Centruy Flooring, LLC*,
    C.A. No. 21-6623, 2022 WL 4482761, at *4 ...............................................................6

*Nandorf, Inc. v. Applied Underwriters Captive Risk Assurance Co., Inc.*,
    410 F. Supp. 3d 882 (N.D. Ill. 2019) .................................................................3, 4

*Pandolfi v. AviaGames, Inc.*,
    2024 WL 4051754 (N.D. Cal. Sept. 4, 2024) ...................................................9, 10

*Patel v. Facebook Inc.*,
    290 F. Supp. 3d 948 (N.D. Cal. 2018) ..................................................................17

*PDC Labs, Inc. v. Hach Co.*,
    No. 09-1110, 2009 WL 2605270 (C.D. Ill. Aug. 25, 2009) ..................................13

*Phillips v. Assocs. Home Equity Servs., Inc.*,
    179 F. Supp. 2d 840 (N.D. Ill. 2001) .....................................................................9

*Razor v. Hyundai Motor Am.*,
    854 N.E.2d 607 (Ill. 2006) ....................................................................................13

*Rent-A-Center, West, Inc. v. Jackson*,
    561 U.S. 63 (2010) .......................................................................2, 4, 6, 10

*Sanchez v. CleanNet USA, Inc.*,
    78 F. Supp. 3d 747 (N.D. Ill. 2015) .....................................................................10

*Sherman v. AT&T, Inc.*,
    C.A. No. 11-C-5857, 2012 WL 1021823 (N.D. Ill. Mar. 26, 2012) .....................14

*Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*,
    559 U.S. 662 (2010) ..............................................................................................15

*Tel. Invs. USA, Inc. v. Lumen Techs., Inc.*,
    No. 22-CV-2260, 2022 WL 2828751 (N.D. Ill. July 20, 2022) .........................3, 4

*Testosterone Replacement Therapy Prods. Liab. Litig. Coordinated Pretrial
    Proc.*, No. 14 C 1748, 2017 WL 2574057 (N.D. Ill. May 22, 2017) .....................15

*Tortoriello v. Gerald Nissan of N. Aurora, Inc.*,
    379 Ill. App. 3d 214, 882 N.E.2d 157 (2008) .......................................................13

*Wallrich v. Samsung Electronics Am., Inc.*,
    106 F.4th 609 (7th Cir. 2024) ....................................................................1, 2, 4, 8

*Zuniga v. Major League Baseball*,
    2021 IL App (1st) 201264, 196 N.E.3d 12 ..............................................12, 13, 14

iv

## I.    PRELIMINARY STATEMENT

At issue in this dispute is the question of who decides the arbitrability of a contract between the parties—an arbitrator or the court.  Plaintiffs ask this court to ignore the Customer Agreement's clear and unmistakable delegation of arbitrability to the arbitrator, as well as the well-settled law instructing that when a contract delegates gateway issues of arbitrability, including enforceability, to the arbitrator, the only role for the Court is to determine whether the parties agreed to arbitrate. *See Henry Schein, Inc. v. Inc. v. Archer & White Sales, Inc.* ("*Henry Schein*")*,* 586 U.S. 63, 63 (2019) ("[W]hen the parties' contract delegates the arbitrability question to an arbitrator, a court may not override the contract, even if the court thinks that the arbitrability claim is wholly groundless.).  The Seventh Circuit is in accord.  *See Wallrich v. Samsung Electronics Am., Inc.*, 106 F.4th 609, 620 (7th Cir. 2024).  The Supreme Court and the arbitration provision specifically foreclose what Plaintiffs ask this Court to do—determine that the arbitration provision is unenforceable or unconscionable.  That issue rests firmly and exclusively with an arbitrator.

Ignoring this well settled law, Plaintiffs launch an attack on the arbitration clause *as a whole*—rather than the delegation clause specifically, claiming that it is "so permeated with unconscionability that it is unenforceable under Illinois law."  Plaintiffs' Opposition to Defendants' Motion to Compel (ECF No. 27) ("Opp."), p. 1.  Plaintiffs' attack encompasses almost every aspect of the arbitration provision from the batching process to its class action waiver, before pronouncing it "impregnated with oppressive terms," *id*., yet fails to address the delegation clause specifically.  In support of this facially deficient attack on delegation, Plaintiffs rely on two decisions applying inapposite law from other jurisdictions and interpreting an outdated version of Verizon's Customer Agreement (the "Agreement").  These key differences rob those decisions of any persuasive value here.

Plaintiffs do not dispute that they entered into the 2024 Customer Agreement. Likewise, Plaintiffs do not challenge that an agreement to arbitrate exists or that the agreement includes a broad delegation provision requiring Plaintiffs to arbitrate "any dispute that in any way relates to or arises out of" their wireless service, including "any dispute regarding the validity, enforceability, or scope of any portion of this agreement (including the agreement to arbitrate)…." *See* Declaration of Joseph Ninete (ECF No. 23) ("Decl."), Ex. 8, at p. CA-P.6 (emphasis in original removed). Rather, they seem to argue that because the arbitration clause as a whole is unconscionable, that should be sufficient to deem each individual piece of the arbitration clause, including the delegation of arbitrability to the arbitrator, unconscionable.

Given that the parties do not dispute that there is an agreement to arbitrate, this Court's jurisdictional authority to review the arbitration provision ends. The contract delegating all merits issues, including threshold arbitrability issues such as enforceability and unconscionability, to the arbitrator binds the parties and this Court. The Supreme Court has consistently instructed that this type of contractual delegation is determinative: "[t]he [Federal Arbitration] Act allows parties to agree by contract that an arbitrator, rather than a court, will resolve threshold arbitrability questions as well as underlying merits disputes." *Henry Schein,* 586 U.S. at 65 (citing *Rent-A-Center, West, Inc. v. Jackson* ("*Rent-A-Center*"), 561 U.S. 63, 68-70 (2010); *First Options of Chicago, Inc. v. Kaplan,* 514 U.S. 938, 943-944 (1995)); *see also Wallrich*, 106 F.4th at 620.

Even if Plaintiffs were mounting a specific challenge to delegation, which they are not, the language in the challenged Verizon delegation provision is substantively identical to provisions routinely enforced by the Supreme Court and Seventh Circuit. Plaintiffs fail to cite a single case to invalidate these prior decisions or identify any facts that would make the delegation of gateway issues to an arbitrator uniquely unfair here. Instead, Plaintiffs' "delegation" challenge is to a single

2

sentence in the arbitration provision that is not part of the delegation provision itself, and is unrelated to the initial delegation of gateway issues of scope, validity, and enforceability to the arbitrator. The challenged sentence relates to the *post-delegation* process for arbitrator selection following enforceability review. This is plainly not related to the delegation itself, and, in any event, it is not unconscionable.

The parties unambiguously delegated the question of arbitrability to the arbitrator. This Court cannot upend the parties' agreement and ignore well settled binding precedent by doing the job that the parties unambiguously delegated to the arbitrator.

## II. ARGUMENT

### A. The Arbitrator, Not the Court, Must Decide Issues of Scope and Enforceability—Including Unconscionability.

#### i. *The Parties Agreed To Arbitrate Disputes Regarding the Scope and Enforceability of the Arbitration Provision.*

Plaintiffs do not, and could not, reasonably challenge that the parties agreed to delegate gateway issues including enforceability to an arbitrator. Courts find evidence of intent to delegate arbitrability in two circumstances: (1) clear and unmistakable delegation language in the contractual language, and (2) when the contract incorporates AAA rules. *See Tel. Invs. USA, Inc. v. Lumen Techs., Inc.*, No. 22-CV-2260, 2022 WL 2828751, at *4 (N.D. Ill. July 20, 2022); *Nandorf, Inc. v. Applied Underwriters Captive Risk Assurance Co., Inc.*, 410 F. Supp. 3d 882, 888 (N.D. Ill. 2019) (collecting cases).

Both circumstances are present here. As to the former, the parties explicitly agreed in the delegation provision "TO RESOLVE DISPUTES ONLY BY ARBITRATION OR IN SMALL CLAIMS COURT," including "ANY DISPUTE THAT IN ANY WAY RELATES TO OR ARISES OUT OF [THE] AGREEMENT" and "ANY DISPUTE REGARDING THE VALIDITY, ENFORCEABILITY OR SCOPE OF ANY PORTION OF [THE] AGREEMENT (INCLUDING

THE AGREEMENT TO ARBITRATE." Decl., Ex. 8 at CA-P.6, ¶ 1 (emphasis in original). This is clear and unmistakable evidence of intent to arbitrate arbitrability. *See, e.g., id.; Tel. Invs. USA, Inc.*, 2022 WL 2828751, at *5; *Lee v. Uber Techs., Inc.*, 208 F. Supp. 3d 886, 891 (N.D. Ill. 2016); *Kemph v. Reddam*, 2015 WL 1510797, at *4 (N.D. Ill. Mar. 27, 2015). As to the latter, the Agreement expressly states that "the AAA'S CONSUMER ARBITRATION RULES WILL APPLY," Decl., Ex. 8 at CA-P.6. *See Nandorf, Inc.*, 410 F. Supp. 3d at 889; *Cabrera v. Verizon*, No. CV 24-7780-ES-AME, 2024 WL 4818091, at *4 (D.N.J. Nov. 18, 2024) (arbitration provision in Verizon internet service agreement evidenced clear and unmistakable intent to delegate arbitrability because it incorporated AAA rules).

Gateway issues of arbitrability include scope, validity, and enforceability. *See Rent-A-Center*, 561 U.S. at 68-69. Once delegated to the arbitrator, a court has no authority to determine the threshold issues of arbitrability, including enforceability. *Tel. Invs. USA, Inc.*, 2022 WL 2828751, at *4 ("When parties make this clear and unmistakable delegation, a court 'possesses no power to decide the arbitrability issue.'") (quoting *Henry Schein*, 586 U.S. at 68); *Wallrich*, 106 F.4th at 620) ("[I]f a valid [arbitration] agreement exists, and if the agreement delegates the arbitrability issue to an arbitrator, a court may not decide the arbitrability issue.") (quoting *Henry Schein*, 586 U.S. at 69).

Endeavoring to avoid the iron-clad delegation provision in their agreement with Verizon, Plaintiffs recite a litany of reasons this Court should ignore the parties' agreement to arbitrate. *See e.g.*, Opp. at p. 1-2 (challenging post-delegation review process, bellwether process, class waiver, contract presented on take-it-or-leave-it basis). But this Court lacks jurisdiction to decide those issues because they don't challenge the delegation itself. The delegation provision squarely places each issue Plaintiffs raise within the arbitrator's purview. *See, e.g., Granite Rock Co. v. Int'l Bhd.*

*of Teamsters*, 561 U.S. 287, 299-301 (2010) (threshold matters of arbitrability concern "the formation of the parties arbitration agreement," as well as its "enforceability or applicability to the dispute at issue"); *Fahy v. Minto Dev. Corp.*, 722 F. Supp. 3d 784, 797 (N.D. Ill. 2024) (threshold questions of arbitrability include disputes regarding enforceability); *Kemph*, 2015 WL 1510797, at *3 ("Threshold issues of arbitrability" include "the scope of the arbitration clause and enforceability"); *Lee*, 208 F. Supp. 3d at 894 (enforceability/conscionability is a threshold question of arbitrability that may be delegated to arbitrator).

Because the Agreement clearly and unmistakably shows the parties' intent to submit gateway issues of arbitrability to the arbitrator, this Court must honor that agreement and refer the dispute to arbitration.

> ii. *Plaintiffs' Broad Attack on the Arbitration Provision Does Not Constitute an Attack on the Initial Delegation of Arbitrability.*

Plaintiffs claim they are attacking the delegation of arbitrability, but they do not argue that the initial delegation of arbitrability is unfair or was not agreed upon. Notably, Plaintiffs do not dispute that the Parties agreed to delegate threshold issues regarding "the validity, enforceability, or scope of any portion of this agreement (including the agreement to arbitrate) …" (Decl. Ex. 8 at CA-P.6, ¶ 1), nor do they argue that this delegation is unconscionable or otherwise enforceable. Instead, they attack (i) the arbitration provision generally, stating that it is "permeated with unconscionability," Opp., p. 1, and (ii) a post-delegation review process that applies only if AAA refuses to enforce the arbitration provision. Those are not direct, or even indirect, challenges to the delegation of arbitrability.

Once gateway issues are delegated to an arbitrator, the court can only consider whether there is something uniquely unfair about the initial delegation itself that renders the delegation clause unenforceable. *See Attix v. Carrington Mortg. Servs., LLC*, 35 F.4th 1284, 1304 (11th Cir.

2022) ("To 'directly' or 'specifically' challenge the validity or enforceability of a delegation agreement, it is not sufficient for a party to merely say the words, 'I am challenging the delegation agreement.' Challenging a delegation agreement is a matter of substance, not form. A party specifically challenges the validity or enforceability of a delegation agreement if, and only if, the substantive nature of the party's challenge meaningfully goes to the parties' precise agreement to delegate threshold arbitrability issues.").

Plaintiffs have not identified anything unconscionable about the initial delegation itself or explained why it would be unfair for the arbitrator to decide the gateway issues of scope, validity, or enforceability. Instead, they argue that the arbitration provision is permeated with unconscionability and challenge a process that applies *after* there is a merits decision on the gateway issue of enforceability. Specifically, Plaintiffs challenge a single sentence in an entirely separate paragraph from the initial delegation provision that states: "IF THE AAA REFUSES TO ENFORCE ANY PART OF THE ARBITRATION PROVISION, YOU AND VERIZON WILL SELECT ANOTHER ARBITRATOR" (Decl., Ex. 8, CA-p.6, ¶ 2). This provision requires an arbitrator to be replaced only after the delegation of arbitrability to the arbitrator has occurred. This argument misses the point. Absent a specific challenge to the validity of the initial delegation provision, the court must treat the arbitration clause as valid and enforce it, "leaving any challenge to the validity of the agreement as a whole for the arbitrator." *Nanberg v. 21st Century Flooring, LLC*, C.A. No. 21-6623, 2022 WL 4482761, at *4 (N.D. Ill. Sept. 27, 2022) (quoting *Rent-A-Center*, 561 U.S. at 72).

A similar argument was considered and rejected by the Ninth Circuit where the following sentence was added a few lines after the delegation clause:

**IF THIS AGREEMENT IS DETERMINED TO BE UNENFORCEABLE, ANY CLAIMS BETWEEN YOU AND**

**THE COMPANY RELATED TO YOUR EMPLOYMENT SHALL BE SUBJECT TO A NONJURY TRIAL IN THE FEDERAL OR STATE COURT THAT HAS JURISDICTION OVER THE MATTER.**

*Holley-Gallegly v. TA Operating, LLC*, 74 F.4th 997, 1002 (9th Cir. 2023). As the Ninth Circuit explained, such a provision "cannot support the conclusion that an agreement to arbitrate enforceability (*i.e.*, the delegation clause) is unenforceable" because "the jury waiver would only have an effect—if any—*after* it has been determined that the Agreement is unenforceable." *Id.* (emphasis in original).

Since none of the complained about fairness challenges raised by Plaintiffs specifically attack the initial delegation itself, all are outside the scope this Court may consider. Indeed, Plaintiffs' focus on *MacClelland v. Cellco Partnership*, 609 F. Supp. 3d 1024 (N.D. Cal. 2022) and *Achey v. Cellco Partnership*, 475 N.J. Super. 446 (2023) highlights that their challenge to delegation is one in name only, as those cases do not involve an attack on delegation and instead analyze various challenges to the agreement as a whole. In *MacClelland*, the Court found (incorrectly[1]) that an outdated version of the Customer Agreement did not contain a delegation clause, 609 F. Supp. 3d at 1032, and in *Achey*, the issue of the delegation clause was not raised at all, *see* 475 N.J. Super. at 450-59. Because *MacClelland* and *Achey* did not apply the discussion of unconscionability to the delegation clause, they are irrelevant to this analysis.

---

[1] In *MacClelland*, the arbitration agreement did not contain an express delegation clause, however, it did incorporate the AAA Rules. Nonetheless, the *MacClelland* court incorrectly found that the incorporation of the AAA Rules did not constitute clear and unambiguous intent to delegate arbitrability under the facts of that case. *See MacClelland*, 609 F.Supp.3d 1031-1032 (when the contract involves unsophisticated parties, incorporating the AAA consumer rules is not clear and unmistakable evidence of an agreement to arbitrate arbitrability, particularly where the rules are not quoted or appended to the agreement and where claims over $10,000 can only be arbitrated under the AAA rules, which contain a delegation of arbitrability to the arbitrator, but claims under $10,000 could go to BBB arbitration and its rules do not have a delegation provision).

Plaintiffs have not levied a specific challenge to the delegation clause, so this Court is obligated to enforce the delegation provision and refer this matter to arbitration.

### iii. Plaintiffs' Argument That The Delegation Clause Is Unconscionable Is Without Merit.

Even if construed as a challenge to the initial delegation, Plaintiffs' attack fails because they do not show anything about the delegation provision specifically (or anything within the arbitration clause, for that matter) that is uniquely unfair to the point of unconscionability. *See Attix*, 35 F.4th at 1307-08; *Holley-Gallegly*, 74 F.4th at 1002. There is nothing exceptional about the delegation provision in the Agreement to distinguish it from those repeatedly enforced by both the Supreme Court and the Seventh Circuit. *See Wallrich*, 106 F.4th at 620 ("The Supreme Court 'has consistently held that parties may delegate threshold arbitrability questions to the arbitrator, so long as the parties' agreement does so by 'clear and unmistakable' evidence.'") (quoting *Henry Schein, Inc.*, 586 U.S. at 69); *K.F.C. v. Snap Inc.*, 29 F.4th 835, 837 (7th Cir. 2022) (An arbitration agreement may delegate all issues other than contract formation, including defenses, to the arbitrator).

Plaintiffs' so-called delegation challenge is based on a misreading of a single sentence taken out of context: "If the AAA refuses to enforce any part of the arbitration provision, you and Verizon will select another arbitrator." Opp., p. 5 (quoting Decl., Ex. 8 at CA-P.6). Plaintiffs argue this clause is unconscionable because it requires replacement of any arbitrator who refuses to enforce any part of the arbitration provision "in a repeating loop, until an arbitrator comes along, rules in Verizon's favor, and forces the customer into the absurd situation of being forced to participate in the arbitration conducted under the unconscionable arbitration provision." Opp., p. 2.

8

Plaintiffs' characterization of this sentence misrepresents the parties' Agreement for two reasons, and should fail. First, as described above, the sentence identified by Plaintiffs is only operative *after* delegation of arbitrability issues has occurred. Second, Plaintiffs intentionally omitted the next sentence in the Agreement, as reproduced below, which plainly avoids the "Kafkaesque" scenario invented by Plaintiffs.

> IF THE AAA REFUSES TO ENFORCE ANY PART OF THE ARBITRATION PROVISION, YOU AND VERIZON WILL SELECT ANOTHER ARBITRATOR. **IF THERE IS NO AGREEMENT, A COURT IN THE COUNTY OF YOUR BILLING ADDRESS WILL SELECT AN ARBITRATOR TO DECIDE THE DISPUTE…**

Decl., Ex. 8 at p. CA-P.6 (emphasis added). Plaintiffs misleadingly omit the bolded language making clear that if the parties do not agree, post-review, to allow the matter to proceed in arbitration, it will proceed to court. For both these reasons, Plaintiffs' argument fails.

This Court should not entertain Plaintiffs' wildly speculative and distorted characterization of the entire arbitration agreement premised on a misinterpretation of a single, misleadingly edited sentence. *See, e.g., Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 21 (1991) ("declin[g] to indulge" arguments premised on speculation that "the parties and arbitral body conducting a proceeding will be unable or unwilling to retain competent, conscientious, and impartial arbitrators"); *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 634 (1985); *Phillips v. Assocs. Home Equity Servs., Inc.*, 179 F. Supp. 2d 840, 845 (N.D. Ill. 2001). So, too, should this Court decline to find that the delegation clause in the Parties' Agreement is invalid on the basis of a far-fetched plot invented by Plaintiffs.[2] And even if the Court were to find it

---

[2] Plaintiffs also argue that the batching process of the coordinated arbitration provision set forth in Paragraph 6 is unconscionable as applied to the delegation clause; however, in apparent recognition of the futility of this argument, Plaintiffs relegate this argument to a passing footnote. *See* Opp., p. 17 n.12. Indeed, Plaintiffs' argument is premised entirely on *Pandolfi v. AviaGames, Inc.*, 2024 WL 4051754, at *6 (N.D. Cal. Sept. 4, 2024), which is inapposite for myriad reasons: First, *Pandolfi* is an unreported decision of a California court applying California law regarding unconscionability, and therefore has no relevance

unconscionable, the challenged sentence should be severed from the Agreement. Decl. at Ex. 8, CA-P.8.

Because Plaintiffs do not levy a meritorious challenge directed to the fairness of the initial delegation itself, the Court must enforce it and allow the arbitrator to resolve the scope and enforceability issues Plaintiffs raise. *See Fahy*, 722 F. Supp. 3d at 787; *Rent-A-Ctr.*, 561 U.S. at 72; *Coinbase, Inc. v. Suski*, 602 U.S. 143, 152 (2024).

> **B.      Even If The Court Were To Decide Arbitrability, It Should Require Plaintiffs To Arbitrate Their Claims.**

Even if this Court were to ignore the clear delegation of arbitrability, the Court should find that the Agreement requires Plaintiffs to arbitrate their BIPA claims. Not only are the claims within the scope of the arbitration provision contained in the Agreement, courts routinely enforce the type terms Plaintiffs challenge here.

> *i.      Plaintiffs Rely On An Outdated Agreement And Inapplicable Law.*

Unable to make their unconscionability argument under Illinois law, Plaintiffs resort to cases applying the laws of New Jersey and California. However, unconscionability is a question of state law, so Illinois law controls. *See Koveleskie v. SBC Capital Markets, Inc.,* 167 F.3d 361, 366-67 (7th Cir.1999); *Sanchez v. CleanNet USA, Inc.*, 78 F. Supp. 3d 747, 753 (N.D. Ill. 2015).

---

to this Court's decision. Second, the bellwether provision in *Pandolfi* permitted arbitration of only 20 cases at a time, until all claims included in the coordinated arbitration had been resolved. *See id.* Here, the Paragraph 6 requires only two bellwether rounds, simultaneously conducted in groups of 50 and 80 individual cases after which a claimant is free to opt out. *See* Decl., Ex. 8 at p. CA-P.7 & CA-P.8. Therefore, the same concerns about prospective delay on gateway issues alone which drove the court's decision in *Pandolfi* are not present here. Third, the *Pandolfi* court did not find that bellwether provisions were *per se* unenforceable as applied to all delegation clauses, and instead explicitly limited its finding of unconscionability to the facts of that case. *See Pandolfi*, 2024 WL 4051754, at *6. Indeed, the *Pandolfi* court expressly emphasized that its analysis of that specific bellwether provision was not a "general condemnation" of such case management tools. *Id.*, at *6 n.4.

The New Jersey and California cases on which Plaintiffs rely also relate to an outdated Customer Agreement, which the *MacClelland* court found (again, incorrectly[3]) did *not* clearly and unambiguously delegate arbitrability to the arbitrator. The analysis in those cases is inapplicable because it relates to a different, older version of the Agreement that lacked an express delegation provision, relying instead on its incorporation of AAA rules to delegate arbitrability.

Plaintiffs' arguments fail for the equally persuasive reason that they attempt to coat-tail on decisions interpreting outdated and superseded arbitration provisions. Plaintiffs argue that the differences between the previous and current arbitration provisions are "hollow window dressing." Opp., p.1. But even cursory review of the two agreements shows that is false. To name a few, the agreements include the following substantive changes relevant to Plaintiffs' arguments:

| | **October 2021 Agreement** | **August 2024 Agreement** |
|---|---|---|
| **Scope** | <ul><li>No express language stating the agreement to arbitrate includes disputes regarding the validity, enforceability or scope of the agreement to arbitrate.</li><li>No express language including disputes for personal injury or invasion of privacy.</li></ul> | <ul><li>Express language covering "any dispute regarding the validity, enforceability or scope of any portion of this Agreement (including the agreement to arbitrate)…."</li><li>Express language including disputes for any such products or services, or alleged personal injury and invasion of privacy.</li></ul> |
| **Applicable Arbitration Rules** | <ul><li>For claims over $10,000: AAA Consumer Arbitration Rules</li><li>For claims under $10,000: consumer's choice of AAA Consumer Arbitration Rules or BBB Rules for Binding Arbitration</li></ul> | <ul><li>AAA Consumer Arbitration Rules</li></ul> |
| **Delegation Clause** | <ul><li>No express delegation clause.[4]</li></ul> | <ul><li>Arbitrator has "exclusive authority to arbitrate, including but not limited to any dispute regarding the validity,</li></ul> |

---

[3] *See supra,* n.1.

[4] *But see supra,* n.1.

|  | **October 2021 Agreement** | **August 2024 Agreement** |
|---|---|---|
|  |  | enforceability or scope of any portion of this Agreement (including the agreement to arbitrate)" |
| **Coordinated Individual Bellwether Process** | • Triggered by 25 or more claimants with similar claims and coordinated counsel.<br>• 10 bellwether cases per round (5 chosen per side). No other cases to be filed until first 10 are resolved. Process repeats until parties resolve all claims.<br>• Arbitration award/judgment applies only to that specific case, and cannot be used in any other case. | • Triggered by 50 or more claimants with similar claims and the same or coordinated counsel.<br>• Round 1: 50 individual bellwether cases (25 chosen per side); Round 2: 80 individual bellwether cases (40 chosen per side). Mandatory mediation (paid by Verizon) follows each round.<br>• Customers or Verizon may opt out after Round 2 and pursue individual claims in court.<br>• Any remaining cases proceed in batches of 80.<br>• Arbitration award/judgment applies only to that specific case, and cannot be used in any other case. |
| **Tolling** | • No. | • If bellwether process is initiated, a customer's notice tolls the statute of limitations until bellwether proceedings complete. |

> ii.    *The Specific Provisions Relied on Are Not Procedurally Unconscionable*

Not only are *McClelland* and *Achey* inapposite because they apply the law of other jurisdictions to outdated agreements, but Plaintiffs' argument also fails on the merits.

First, Plaintiffs argue the coordinated arbitration and class action waiver provisions are procedurally unconscionable because they were "presented on a take-it-or-leave-it basis." Illinois courts repeatedly reject this argument and refuse to find procedural unconscionability of a "take-it-or-leave-it contract over which the consumer had no ability to negotiate (*i.e.*, a contract of adhesion)… [or] merely because [the contract] is presented in fine print or uses legal language that an average consumer might not fully understand." *Zuniga v. Major League Baseball*, 2021

IL App (1st) 201264, ¶ 15, 196 N.E.3d 12, 21 (citations omitted). The very cases cited by Plaintiffs recognize that "[c]ontracts with these characteristics are 'a fact of modern life,'" and "without those characteristics giving rise to a finding of procedural unconscionability." *Id.* (quoting *Kinkel v. Cingular Wireless, LLC*, 22d Ill. 2d 1, 26 (2006)). Without some demonstrated added coercion or overreaching in the procurement of the agreement (and not just its terms) — neither of which have been pled, much less shown by the Plaintiffs — courts will enforce the agreement. *Zuniga*, 196 N.E.3d at 21; *Tortoriello v. Gerald Nissan of N. Aurora, Inc.*, 379 Ill. App. 3d 214, 233, 882 N.E.2d 157, 175 (2008).

Next, Plaintiffs claim the Agreement is procedurally unconscionable because the full terms were visible only in inconspicuous links. But under Illinois law, "[p]rocedural unconscionability refers to a situation where a term is so difficult to find, read, or understand that the plaintiff cannot fairly be said to have been aware he was agreeing to it, and also takes into account a lack of bargaining power." *Razor v. Hyundai Motor Am.*, 854 N.E.2d 607, 622 (Ill. 2006); *see also Jackson v. Payday Fin., LLC,* 764 F.3d 765, 777 (7th Cir. 2014). Illinois courts routinely uphold the conspicuousness of links like those at issue here. *See, e.g., Hubbert v. Dell Corp.*, 359 Ill. App. 3d 976, 984 (2005) (arbitration agreement contained in the "Terms and Conditions of Sale" on defendant's website not procedurally unconscionable because Terms and Conditions were referenced and hyperlinked on each of the forms plaintiffs completed to make their purchases); *PDC Labs, Inc. v. Hach Co.*, No. 09-1110, 2009 WL 2605270, at *3 (C.D. Ill. Aug. 25, 2009) (terms and conditions sufficiently conspicuous because they were specifically referenced in last step of order process and hyperlinked in underlined, blue contrasting text); *Forby v. One Techs., LP*, No. 15-0757-DRH-PMF, 2016 WL 11746078, at *7 (S.D. Ill. Mar. 25, 2016) (hyperlinks contained within text in close proximity to button that user must press to continue the sign up

process were sufficiently conspicuous). Claims that the terms were not conspicuous enough or not read by the Plaintiff do not render the agreement procedurally unconscionable. *See, e.g., Crandall v. AT&T Mobility, LLC*, C.A. No. 07-750-GMP, 2008 WL 2796752, at *4 (S.D. Ill. 2008) (arbitration clause contained in box consumers received with their mobile phones not procedurally unconscionable even if not read); *see also Sherman v. AT&T, Inc.*, C.A. No. 11-C-5857, 2012 WL 1021823, at *4 (N.D. Ill. Mar. 26, 2012) (internet service customer bound by revised arbitration provision where customer "agreed to a contract with a change-in-terms-provision," and received an e-mail notice with information about the revisions); *Boomer v. AT&T Corp.*, 309 F.3d 404, 415 (7th Cir. 2002) (Under Illinois law, telephone service customer who received mailed notice of new terms—including a new arbitration provision—accepted those terms by continuing to use the phone service).[5]

### iii. The Specific Provisions Relied on Are Not Substantively Unconscionable.

Plaintiffs' scattershot argument that the coordinated arbitration provision is substantively unconscionable is meritless. Plaintiffs rely heavily on *Heckman v. Live Nation Ent., Inc.*, 120 4th 670, 692 (9th Cir. 2024) to argue that any bellwether, batching, or bar on class arbitration is wholesale prohibited as inconsistent with the FAA and bilateral arbitration and is demonstrably wrong. (Opp., pp. 11-12). *Heckman* is a Ninth Circuit case applying California law, so it is neither

---

[5] For this reason, Plaintiffs' reliance on *Zuniga* is misplaced. In *Zuniga*, the court found that the arbitration provision referenced on the reverse side of a baseball ticket was procedurally unconscionable, in large part because the ticket did not contain the actual terms and conditions of the contract, but merely a summary thereof. 196 N.E.3d at 23. However, in reaching this conclusion, the court expressly considered the circumstances surrounding the formation of the alleged agreement to arbitrate. *Id.* at 29. In particular, the *Zuniga* court noted that the plaintiff received her ticket on the day of the game, and that "the hassle of needing to use a devise with Internet access to visit the Cubs' website while at the commotion of the ballpark or to visit the Cubs' administrative office to read the full terms and conditions is a circumstance that gives ticket holders little realistic ability to become meaningfully informed of the full arbitration provision that they are agreeing to be using the ticket." *Id.* The circumstances at issue in *Zuniga* were therefore nothing like the circumstances at issue here, where Plaintiffs had the opportunity to access and review the then-current version of the Customer Agreement at any time and at their convenience over the course of the years that they used Verizon Wireless service.

controlling nor instructive with respect to Illinois law. Even if it were relevant, *Heckman* is entirely distinguishable because it focused on a requirement that a single arbitrator make merits decisions on a consolidated basis whenever five or more claims were initiated, and those decisions would be "precedential" to subsequent claims. 120 F.4th at 678. The Ninth Circuit found that process unconscionable because, "[a] batched plaintiff whose case is not a bellwether case has no notice of the bellwether cases and no opportunity to be heard in those cases. Further, that plaintiff has no guarantee of adequate representation in those cases and has no right to opt out of the batched cases that will be bound by the results in the bellwether cases." *Id.* at 684.

That is nothing like the process agreed to by Verizon and Plaintiffs where cases "proceed in arbitration in individual bellwether proceedings before separate arbitrators" and where "[a]n arbitration award and any judgment confirming it apply only to that specific case; it can't be used in any other case except to enforce the award itself." Decl., Ex. 8, at CA-P.7, 8. The *Heckman* concerns about undermining the FAA principles of individual, bilateral arbitration are not at issue here. The bellwether process used in Verizon's agreement is a widely-used tool in multi-district litigation to streamline the resolution of cases. *See, e.g., In re Testosterone Replacement Therapy Prods. Liab. Litig. Coordinated Pretrial Proc.*, No. 14 C 1748, 2017 WL 2574057, at *4 (N.D. Ill. May 22, 2017); *Cannon v. Armstrong Containers Inc.*, 92 F.4th 688, 709-10 (7th Cir. 2024). The bellwether process is a far cry from procedurally unconscionable. And, even if a specific term contained in the arbitration agreement were deemed unconscionable, which it should not be, it can be remedied by severing the offending provision. Decl., Ex. 8, at CA-P.6 ¶ 6, CA-P.8.

### iv.    The Class Action Waiver Is Not Substantively Unconscionable.

Finally, there is no merit to Plaintiffs' claim that the class action waiver is substantively unconscionable. Class action waivers are routinely enforced as part of an agreement to arbitrate. *See e.g., Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 687 (2010) (reversing order

compelling class arbitration where the arbitration agreement was silent on the question because parties must affirmatively agree to class arbitration.); *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 351 (2011) (the FAA preempts state laws or policies that prohibit enforcement of class arbitration waivers); *Lamps Plus, Inc. v. Varela*, 139 S. Ct. 1407, 1416 (2019) (reversing order compelling class arbitration where the contract terms were ambiguous because parties must affirmatively agree to class arbitration).

v.    The Arbitrator Determines the Scope of the Arbitration Provision.

As a final attempt to end-run their agreement to arbitrate, Plaintiffs argue the BIPA claims themselves are outside the scope of the Agreement to arbitrate. Not only is this wrong on the merits, but it ignores the fact that the arbitrator—not this Court—must determine that issue. *See supra* at Section (A)(i). Even if this Court were to decide arbitrability, there can be no genuine dispute that the BIPA claims are covered by the agreement, which is broad and extends to "ANY DISPUTE THAT IN ANY WAY RELATES TO OR ARISES OUT OF [THE CUSTOMER] AGREEMENT," including "ANY DISPUTE REGARDING… ANY EQUIPMENT, PRODUCTS AND SERVICES YOU RECEIVE FROM US" and "ALLEGED PERSONAL INJURY OR INVASION OF PRIVACY RELATING TO SUCH PRODUCTS OR SERVICES." Decl., Ex. 8 at p. CA-P.6. The question is not, as Plaintiffs posit, whether the Voice ID FAQs form part of the Customer Agreement itself, but rather whether Plaintiffs' BIPA claims arising from their use of the Voice ID service "relates to or arises out of" the Customer Agreement or the wireless service provided thereunder. They clearly do.

Under Illinois law, an arbitration clause like Verizon's that covers all claims "arising out of" and "relating to" the contract at issue, is not limited to the specific terms of the contract containing the arbitration clause. *See, e.g., Fiala v. Bickford Senior Living Grp., LLC*, 2015 IL

App (2d) 141160, ¶ 19, 32 N.E.3d 80, 86 (2015); *Keeley & Sons, Inc. v. Zurich Am. Ins. Co.*, 409 Ill. App. 3d 515, 522-23, 947 N.E.2d 876, 883 (2011). Likewise, in the Seventh Circuit, "arising out of" and "relating to" language is "extremely broad and capable of an expansive reach," which extends to "all disputes having their origin or genesis in the contract, whether or not they implicate interpretation or performance of the contract *per se*." *Gore v. Alltel Commc'ns, LLC*, 666 F.3d 1027, 1033 (7th Cir. 2012).

Plaintiffs allege the BIPA claims arise from their enrollment in the Verizon Wireless Voice ID feature. Verizon offers Voice ID in connection with Plaintiffs' wireless services, not as some sort of stand-alone service, and thus necessarily "arises out of" or "relates to" Plaintiffs' Verizon Wireless service. Moreover, the arbitration provision expressly extends to claims of alleged invasion of privacy relating to Plaintiffs' use of the Verizon Wireless service. Decl., Ex. 8 at p. CA-P.6. Federal courts, including this Court, have described BIPA as creating a "legal right to privacy" and have characterized lawsuits brought under BIPA as "invasion of privacy lawsuits." *Acaley v. Vimeo, Inc.*, 464 F. Supp. 3d 959, 969 (N.D. Ill. 2020) (citing *Dixon v. Washington & Jane Smith Cmty.–Beverly*, No. 17 C 8033, 2018 WL 2445292, at *9 (N.D. Ill. May 31, 2018); *Patel v. Facebook Inc.*, 290 F. Supp. 3d 948, 953-54 (N.D. Cal. 2018)). Here, where the arbitration provision is expansive and expressly includes claims arising out of or relating to an alleged invasion of privacy relating to the Verizon Wireless service, it encompasses Plaintiffs' BIPA claims arising from their enrollment in the Voice ID feature of the wireless service.

### C.    Plaintiffs Have Failed To Plead A Plausible BIPA Claim Against Verizon Communications Inc.

Whether Plaintiffs have stated a cause of action against Verizon Communications Inc. is a merits question for the arbitrator to decide. In any event, Plaintiffs have not plausibly alleged that Verizon Communications Inc. provides the Voice ID service at issue. Plaintiffs argue that "Voice

ID is not a product that is limited to Verizon Wireless customers," and that it is also offered to customers of Fios Home Internet, Fios TV, and Fios Digital Voice—services that are not offered through Cellco Partnership [d/b/a Verizon Wireless]." Opp., p. 20. Plaintiffs do not allege a single fact plausibly suggesting that Verizon Communications Inc. offers Fios Home Internet, Fios TV, and Fios Digital Voice. Nor could they, as Verizon Communications Inc. is a holding company and provides no services to Verizon Wireless customers. Decl., ¶ 43. Plaintiffs' claims against Verizon Communications Inc. should be dismissed or compelled to arbitration. *See* Decl., Ex. 8, at CA-P.8.

## III. CONCLUSION

For the foregoing reasons, and for the reasons set forth in Defendant's memorandum of law (ECF No. 18), the merits of the pending clams are for the arbitrator to decide and not the court. Therefore, the Court should grant Defendants' motion to compel arbitration and stay the proceedings.

January 21, 2025

Respectfully submitted,

BARON HARRIS HEALEY

By: */s/* Steven L. Baron
Steven L. Baron (ARDC No. 6200868)
Sharon R. Albrecht (ARDC No. 6288927)
150 South Wacker Drive, Suite 2400
Chicago, Illinois 60606
Telephone: (312) 741-1027
E-Mail: sbaron@bhhlawfirm.com
        salbrecht@bhhlawfirm.com


HUNTON ANDREWS KURTH LLP

By: */s/* Ann Marie Mortimer

Ann Marie Mortimer (admitted *pro hac vice*)
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627
Telephone: (213) 532-2000
E-Mail: amortimer@HuntonAK.com

By: */s/* Tara L. Elgie

Tara L. Elgie (General Bar No. 48259)
1445 Ross Avenue, Suite 3700
Dallas, Texas 75202
Telephone: (214) 979-8212
E-Mail: telgie@HuntonAK.com

*Attorneys for Cellco Partnership d/b/a*
*Verizon Wireless, and Verizon*
*Communications Inc.*