IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Thelton George Parker, Jr., and Steven Doyle, *Individually and on Behalf of All Others Similarly Situated*,<br><br>          Plaintiffs,<br> v.<br>Verizon Communications Inc. and Cellco Partnership d/b/a Verizon Wireless,<br><br>          Defendants. | 1:24-cv-08436<br>Hon. Jorge L. Alonso |

**VERIZON'S SUPPLEMENTAL BRIEF
CONCERNING ISSUES RAISED IN COURT'S FEBRUARY 20, 2025, ORDER**

**TABLE OF CONTENTS**

I. Gateway issues of arbitrability, including enforceability, are exclusively for the arbitrator to decide. ................................................................................................................................. 2

II. Plaintiffs must show that the delegation clause itself is unconscionable. ........................... 3

III. The delegation clause is enforceable and not unconscionable. ........................................... 4

    A. The "arbitrator replacement" provision does not render the delegation clause unconscionable. ........................................................................................................................ 5

        1. Plaintiffs misconstrue the provision, which is unrelated to delegation. ...................... 5

        2. The provision does not make the delegation clause unconscionable. ......................... 7

    B. The mass arbitration and bellwether provision does not render the delegation clause unconscionable. ........................................................................................................................ 8

    C. The class-action waiver does not render the delegation clause unconscionable. ......... 10

        1. Plaintiffs' arguments go to the enforceability of the Agreement as a whole. ............ 11

        2. The class-action waiver is enforceable. .................................................................... 11

IV. There is no bar under Illinois law to delegating gateway issues to the arbitrator. ............ 12

**CONCLUSION** ........................................................................................................................ 14

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Agha v. Uber Techs., Inc.*,
  730 F. Supp. 3d 756 (N.D. Ill. 2024) .......................................................................................12

*Angelilli v. Activision Blizzard, Inc.*,
  No. 23-CV-16566, 2025 WL 524276 (N.D. Ill. Feb. 18, 2025) ................................................4

*AT&T Mobility LLC v. Concepcion*,
  563 U.S. 333 (2011)..................................................................................................................11

*Attix v. Carrington Mortg. Servs., LLC*,
  35 F.4th 1284 (11th Cir. 2022) ..............................................................................................1, 4

*Atwood v. Rent-A-Ctr. E., Inc.*,
  No. No. 15-cv-1023, 2016 WL 2766656 (S.D. Ill. May 13, 2016) .........................................13

*Auyeung v. Toyota Motor Sales, USA, Inc.*,
  No. 1-278, 2019 WL 3385189 (N.D. Ill. July 1, 2019) (Alonso, J.)..................................11, 12

*Bess v. DirecTV, Inc.*,
  381 Ill. App. 3d 229, 885 N.E.2d 488 (2008) .........................................................................13

*Braye v. Archer-Daniels-Midland Co.*,
  175 Ill. 2d 201, 676 N.E.2d 1295 (1997)...................................................................................7

*Brne v. Inspired eLearning*,
  No. 17-CV-02712, 2017 WL 4263995 (N.D. Ill. Sept. 26, 2017) ............................................8

*Coinbase, Inc. v. Suski*,
  602 U.S. 143 (2024)..............................................................................................................1, 12

*Deposit Guaranty National Bank, Jackson, Miss. v. Roper*,
  445 U.S. 326 (1980)..................................................................................................................12

*Fahy v. Minto Dev. Corp.*,
  722 F. Supp. 3d 784 (N.D. Ill. 2024) ........................................................................................4

*Gallagher v. Lenart*,
  226 Ill. 2d 208, 874 N.E.2d 43 (2007) ......................................................................................5

*Hengle v. Treppa*,
  19 F.4th 324 (4th Cir. 2021) .....................................................................................................4

*Henry Schein, Inc. v. Archer & White Sales, Inc.*,
   586 U.S. 63 (2019) .................................................................................................. 1, 3, 10

*Holley-Gallegly v. TA Op'g, LLC*,
   74 F.4th 997 (9th Cir. 2023) ............................................................................................. 4

*Hwang v. Pathway LaGrange Prop. Owner, LLC*,
   2024 IL App (1st) 240534 (2024) ................................................................................... 13

*Inetianbor v. CashCall, Inc.*,
   768 F.3d 1346 (11th Cir. 2014) ........................................................................................ 3

*Jackson v. Payday Fin., LLC*,
   764 F.3d 765 (7th Cir. 2014) ............................................................................................ 7

*Johnson v. Cont'l Ill. Nat'l Bank & Trust Co. of Chicago*,
   88 Ill. App. 2d 124, 232 N.E.2d 59 (1967) ...................................................................... 6

*Johnson v. W. & S. Life Ins. Co.*,
   598 F. App'x 454 (7th Cir. 2015) ..................................................................................... 3

*K.F.C. v. Snap Inc.*,
   29 F.4th 835 (7th Cir. 2022) ............................................................................................ 3

*K.H. by & through Headlee v. Chicago Urb. Air, LLC*,
   No. 22-CV-06494, 2023 WL 6976990 (N.D. Ill. Oct. 23, 2023) ................................... 13

*Kinkel v. Cingular Wireless LLC*,
   223 Ill.2d 1, 857 N.E.2d 250 (2006) ................................................................... 7, 11, 13

*Kirwan v. Permian Basin Cmty. Ctrs. for MHMR*,
   No. 16CV00363, 2017 WL 10844959 (W.D. Tex. May 11, 2017) .................................. 8

*Lee v. Uber Techs., Inc.*
   208 F. Supp. 3d 886 (N.D. Ill. 2016) ............................................................................... 4

*MacClelland v. Cellco Partnership*,
   609 F. Supp. 3d 1024 (N.D. Cal. 2022) ....................................................................... 9, 10

*MacDonald v. CashCall, Inc*,
   883 F.3d 220 (3d Cir. 2018) ............................................................................................. 3

*Mace v. Van Ru Credit Corp.*,
   109 F.3d 338 (7th Cir. 1997) .......................................................................................... 12

*O'Shea v. Maplebear Inc.*,
   508 F. Supp. 3d 279 (N.D. Ill. 2020) ............................................................................... 7

*Olivares v. Uber Techs., Inc.*,
 No. 16 C 6062, 2017 WL 3008278 (N.D. Ill. July 14, 2017) (Alonso, J.) ...............................11

*Parm v. Nat'l Bank of Cal., N.A.*,
 835 F.3d 1331 (11th Cir. 2016) .................................................................................................3

*Razor v. Hyundai Motor Am.*,
 222 Ill. 2d 75, 854 N.E.2d 607 (2006) ....................................................................................13

*Rent-A-Ctr., W., Inc. v. Jackson*,
 561 U.S. 63 (2010) ............................................................................................................1, 2, 8

*Streich v. Gen. Motors Corp.*,
 5 Ill. App. 2d 485, 126 N.E.2d 389 (1955) ...............................................................................6

*Thompson v. Gordon*,
 241 Ill.2d 428, 948 N.E.2d 39 (2011) .......................................................................................7

*Tortoriello v. Gerald Nissan of N. Aurora, Inc.*,
 379 Ill. App. 3d 214, 882 N.E.2d 157 (2008) .........................................................................10

*Toth v. Everly Well, Inc.*,
 118 F.4th 403 (1st Cir. 2024) ..................................................................................................11

*Wallrich v. Samsung Elecs. Am., Inc.*,
 106 F.4th 609 (7th Cir. 2024) ...................................................................................................3

**Statutes**

9 U.S.C. § 5 .....................................................................................................................................6

Illinois Uniform Arbitration Act ...................................................................................................13

Binding United States Supreme Court precedent makes clear that if gateway issues of arbitrability are delegated to the arbitrator, as they are here, the Court's role is limited to determining whether there is something uniquely unfair about the initial delegation itself that would render enforcement unconscionable. *Coinbase, Inc. v. Suski*, 602 U.S. 143, 152 (2024); *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 68 (2019); *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 68-69 (2010). A challenge to delegation must be limited to "the parties' precise agreement to delegate threshold arbitrability issues." *Attix v. Carrington Mortg. Servs., LLC,* 35 F.4th 1284, 1304 (11th Cir. 2022). Ignoring this narrow mandate, Plaintiffs default instead to a wholesale attack on the overall fairness of the Arbitration Agreement and not the delegation clause itself. Dkt. 35 at 1 ("The terms of the Arbitration Agreement are outrageously unfair to consumers."). The Court can consider attacks on provisions outside the delegation clause only if those provisions "*as applied* to the delegation provision rendered *that provision* unconscionable." *Rent-A-Ctr., W.,* 561 U.S. at 74 (emphasis in original). Where, as here, Plaintiffs do not show that the delegation itself is inherently unfair and that it prevents Plaintiffs from availing themselves of the agreed-upon forum or remedies, challenges to the overall fairness of the arbitration clause are for the arbitrator to decide, not the Court.

The language of the delegation provision itself is clear, so clear that Plaintiffs have not bothered to dispute this fact. Instead, in an effort to save their misguided arguments regarding the unconscionability of the delegation clause, Plaintiffs rely on *collateral provisions of the Arbitration Agreement*—including the arbitrator replacement, mass arbitration, bellwether, and class action waiver provisions—to attack the delegation clause. But the relevant caselaw, which Plaintiffs ignore, is also clear: unless the delegation itself is uniquely unfair in a manner that renders the delegation illusory—i.e., the delegated forum does not exist, or the selected law does

1

not encompass the gateway issues—the delegation must be upheld.

There are no such bars to enforcement here. The "arbitrator replacement" clause is unrelated to delegation, and Plaintiffs have offered no reason why AAA does not provide an adequate forum to adjudicate gateway issues, much less why the "arbitrator replacement" clause renders delegation itself unconscionable. Plaintiffs also misread the provision to reach an absurd conclusion. The clause simply ensures that there will be an arbitral forum to adjudicate the dispute. Even if the arbitrator replacement clause could be stretched to match Plaintiffs' imagined parade of horribles, the proper remedy would be to strike the offending language, not rewrite the agreement or re-allocate the arbitrator's authority to decide gateway issues to the Court.

Plaintiffs offer no credible argument as to why the mass arbitration, bellwether, or class action waiver provisions bear on initial delegation at all, because none exists. Each of these provisions, which are routinely enforced, relate to the process of administration (i.e., processes that occur after delegation has already taken place), not the availability of a forum or law for fair adjudication of Plaintiffs' arguments. Plaintiffs have offered no basis in law or fact to override the clear delegation of gateway issues and, contrary to Plaintiffs' apparent argument, there is no general Illinois policy of ignoring delegation clauses in consumer agreements. Nor could there be, given the Supreme Court precedent. The Court should therefore now grant Verizon's motion to compel arbitration.

I. **Gateway issues of arbitrability, including enforceability, are exclusively for the arbitrator to decide.**

A delegation provision is an agreement to arbitrate threshold issues concerning arbitrability; it assigns this authority to the arbitrator instead of a court. *Rent-A-Ctr., W.*, 561 U.S. at 68-69. The delegation clause in Verizon's customer agreement is clear and unambiguous, and Plaintiffs do not argue otherwise:

2

> Unless otherwise provided in this agreement, an individual arbitrator appointed to determine the merits of this dispute shall have exclusive authority to arbitrate, including but not limited to any dispute regarding the validity, enforceability or scope of any portion of this agreement (including the agreement to arbitrate) . . . .

Agreement at CA-P.6 (straight capitals omitted; *see* Dkt. 35 at 3-5; Dkt. 44 at 1).

Once gateway issues are delegated to the arbitrator, the only role for the court is to confirm that the arbitration agreement contains a delegation provision. The Court may not substitute its judgment for that of the arbitrator. "When the parties' contract delegates the arbitrability question to an arbitrator . . . , a court possesses no power to decide the arbitrability issue." *Henry Schein, Inc.*, 586 U.S. at 68; *Wallrich v. Samsung Elecs. Am., Inc.*, 106 F.4th 609, 620 (7th Cir. 2024); *K.F.C. v. Snap Inc.*, 29 F.4th 835, 837 (7th Cir. 2022); *Johnson v. W. & S. Life Ins. Co.*, 598 F. App'x 454, 455 (7th Cir. 2015) (once delegated, defenses to the agreement to arbitrate, including enforceability and unconscionability, are "exclusive[ly]" for the arbitrator to decide). This contractual limit on the Court's jurisdiction can only be reviewed if the Court finds that something about the delegation itself is so unfair as to render it unconscionable. Plaintiffs have made no such showing.

### II.    Plaintiffs must show that the delegation clause itself is unconscionable.

Delegation clauses are unenforceable only in very limited circumstances. For example, courts have found unenforceable clauses that delegate to an arbitrable forum that does not exist, where that specific forum is integral to the agreement. *Parm v. Nat'l Bank of Cal., N.A.*, 835 F.3d 1331, 1337 (11th Cir. 2016) (declining to enforce delegation clause where arbitral forum was "illusory and unavailable"); *see MacDonald v. CashCall, Inc*, 883 F.3d 220, 228 (3d Cir. 2018) (same); *Inetianbor v. CashCall, Inc.*, 768 F.3d 1346, 1354 (11th Cir. 2014) (same). So, too, have courts invalidated delegation clauses that hamstring an arbitrator's ability to decide whether an agreement is unconscionable. These delegation clauses are themselves unconscionable because

3

they prevent the arbitrator from assessing the agreement's validity. *Hengle v. Treppa*, 19 F.4th 324, 339 (4th Cir. 2021) (delegation clause barred arbitrator from considering whether agreement impermissibly waived federal rights); *Fahy v. Minto Dev. Corp.*, 722 F. Supp. 3d 784, 806 (N.D. Ill. 2024) (same).

In contrast, courts reject challenges that fail to demonstrate why the delegation clause itself is invalid and that rely instead on collateral provisions to prove unfairness. For example, courts have rejected challenges to a delegation clause that were based on alleged unconscionability of a jury-waiver provision that was within the arbitration provision, *Holley-Gallegly v. TA Op'g, LLC*, 74 F.4th 997, 1003 (9th Cir. 2023); asserting that the agreement was a contract of adhesion, *Angelilli v. Activision Blizzard, Inc.*, No. 23-CV-16566, 2025 WL 524276, *6 (N.D. Ill. Feb. 18, 2025); alleging unconscionability of a fee-splitting arrangement when plaintiffs had a right to opt-out, *Lee v. Uber Techs., Inc.* 208 F. Supp. 3d 886 (N.D. Ill. 2016); and asserting that a federal statute preempts an agreement to arbitrate, *Attix*, 35 F.4th at 1308-1309. Regardless of the merit of those arguments, they are for the arbitrator to decide because they do not challenge whether the delegation provision itself can be enforced.[1]

### III. The delegation clause is enforceable and not unconscionable.

Plaintiffs' complaint that the arbitration agreement as a whole is "outrageously unfair to consumers," and "give[s] Verizon all the advantage" specifically because of provisions relating to arbitrator selection, batching, or the incorporated class action waiver, is an attack on overall fairness of the arbitration clause, not an attack on the delegation clause specifically. Dkt. 44 at 1, 2. Since none of these provisions is tethered to the discrete question of whether delegation provides

---

[1] As noted below, the arbitration agreement here ensures the availability and fairness of the arbitral forum. Specifically, Verizon agrees to pay the costs of arbitration (CA-P.7) and guarantees the arbitration will take place in the county of the customer's billing address (CA-P.6). These and other provisions ensure access to and ease of the arbitral forum.

a forum and opportunity to challenge enforceability, Plaintiffs' arguments are not challenges to the delegation clause. Nor have Plaintiffs offered any credible reason why delegation to the AAA, whose business is arbitration, would deprive Plaintiffs of the forum or laws to adjudicate their dispute with Verizon. There is nothing exceptional about delegating gateway arbitrability issues to the AAA. This Court should do so as well.

### A. The "arbitrator replacement" provision does not render the delegation clause unconscionable.

Plaintiffs attempt to fashion a delegation challenge out of the arbitrator replacement clause contained in paragraph 2 of the Agreement, but fail to explain how the arbitrator replacement provision is related to delegation. *See* Dkt. 35 at 6-8. For this reason alone, Plaintiffs' attempt must fail.

#### 1. Plaintiffs misconstrue the provision, which is unrelated to delegation.

Plaintiffs claim that the following language is designed to allow Verizon to strike arbitrators at will, if the arbitrators do not rule in Verizon's favor:

> If the AAA refuses to enforce any part of the arbitration provision, you and Verizon will select another arbitrator. If there is no agreement, a court in the county of your billing address will select an arbitrator to decide the dispute.

Agreement at CA-P.6 (straight capitals omitted).

Plaintiffs' strained interpretation of paragraph 2 fails. First, this provision does not allow Verizon to take any action unilaterally. Rather, it vests any changes in both parties, or if both parties cannot agree, a court. Second, the more reasonable interpretation of this language is that it only applies if the AAA declines to adjudicate a matter, in which case the parties of course will select another arbitral forum. This plain-text reading must control. *Gallagher v. Lenart*, 226 Ill. 2d 208, 232-33, 874 N.E.2d 43, 58 (2007) (plain and ordinary meaning of contract controls). This interpretation is also consistent with Federal Arbitration Act § 5, which seeks to ensure that the

5

parties get the benefit of their bargain to arbitrate.[2] Once that new arbitrator or forum is in place, the above-quoted provision is no longer applicable. This understanding is consistent with Illinois law and the plain language of the provision.

Plaintiffs' contrary interpretation is also inconsistent with Illinois law for at least three reasons.

*First*, Plaintiffs rewrite the provision, deleting the term "AAA" and adding in its place the word "arbitrator," and deleting the phrase "refuses to enforce" and replacing it with "finds unenforceable," to result in a provision that reads: "If an arbitrator finds unenforceable any part of the arbitration provision" a new arbitrator will be selected. But neither the Plaintiffs nor the Court can rewrite the contract that both parties have agreed to. *See Streich v. Gen. Motors Corp.*, 5 Ill. App. 2d 485, 126 N.E.2d 389, 395 (1955) ("Courts are not clothed with the power to make contracts for parties, nor can they, under the guise of interpretation, supply provisions actually lacking or impose obligations not actually assumed."); *see also Johnson v. Cont'l Ill. Nat'l Bank & Trust Co. of Chicago*, 88 Ill. App. 2d 124, 232 N.E.2d 59, 62 (1967) ("A court, in construing a document, will not add thereto matters about which the document is silent, nor will it reject matters contained therein as mere surplusage").

*Second*, Plaintiffs' rewriting alters how the provision applies, for a result not intended by the plain text. Dkt. 44 at 5. In Illinois, contracts must be interpreted in a reasonable, commonsense

---

[2] 9 U.S.C. § 5 ("If in the agreement provision be made for a method of naming or appointing an arbitrator or arbitrators or an umpire, such method shall be followed; but if no method be provided therein, or if a method be provided and any party thereto shall fail to avail himself of such method, or if for any other reason there shall be a lapse in the naming of an arbitrator or arbitrators or umpire, or in filling a vacancy, then upon the application of either party to the controversy the court shall designate and appoint an arbitrator or arbitrators or umpire, as the case may require, who shall act under the said agreement with the same force and effect as if he or they had been specifically named therein; and unless otherwise provided in the agreement the arbitration shall be by a single arbitrator.").

manner. *O'Shea v. Maplebear Inc.*, 508 F. Supp. 3d 279, 285 (N.D. Ill. 2020); *Thompson v. Gordon*, 241 Ill.2d 428, 948 N.E.2d 39, 47 (2011). That is precisely the interpretation Verizon seeks to apply here.

*Third*, even if the Court were to adopt Plaintiffs' interpretation (which it should not), the appropriate result would be to strike the offending language, not invalidate the agreement to arbitrate or the delegation clause to which both parties agreed. In Illinois, courts prefer "a construction of a contract which renders the agreement enforceable rather than void." *Braye v. Archer-Daniels-Midland Co.*, 175 Ill. 2d 201, 217, 676 N.E.2d 1295, 1303 (1997).

Plaintiffs' attempt to rewrite the arbitrator replacement provision in an effort to invalidate the agreement should be rejected.

### 2. The provision does not make the delegation clause unconscionable.

Even if the arbitrator replacement provision were deemed core to delegation (which it is not), it does not render the delegation substantively unconscionable. Substantive unconscionability refers to terms that are inordinately one-sided in one party's favor. *Jackson v. Payday Fin., LLC*, 764 F.3d 765, 778 (7th Cir. 2014). "Indicative of substantive unconscionability are contract terms so one-sided as to oppress or unfairly surprise an innocent party, an overall imbalance in the obligations and rights imposed by the bargain, and significant cost-price disparity." *Id.* (quoting *Kinkel v. Cingular Wireless LLC*, 223 Ill.2d 1, 857 N.E.2d 250, 267 (2006)).

The "arbitrator replacement" provision does not render the delegation provision substantively unconscionable under Illinois law. In attempting to show otherwise, Plaintiffs contort Verizon's argument. Verizon did not argue that the provision means that the underlying dispute will "proceed in Court" if an arbitrator refuses to enforce the arbitration provision. Dkt. 44 at 6. Instead, Verizon noted that the plain language required the parties to "proceed to court" if the parties do not agree on a replacement arbitrator, "to allow the matter to proceed in arbitration."

7

Dkt. 35 at 9. This is just what the provision states: if the parties cannot agree on a replacement arbitrator or forum, the Court will appoint one. And the Court is empowered to make this appointment by section 5 of the Federal Arbitration Act.

Contrary to Plaintiffs' arguments, the provision does not "guarantee[] a Verizon victory on any challenge made" to the arbitration provision. Dkt. 44 at 6. It ensures that the arbitration provision will govern, that an arbitral forum will be available to decide the merits of the dispute, and that the arbitrator will apply the language of the arbitration provision. No individual arbitrator at AAA is constrained to find the agreement enforceable under legal principles on pain of being replaced. *See Kirwan v. Permian Basin Cmty. Ctrs. for MHMR*, No. 16CV00363, 2017 WL 10844959, at *2 (W.D. Tex. May 11, 2017) (enforcing agreement with provision stating that parties would select another arbitrator should AAA refuse jurisdiction or refuse to enforce discovery limitations).

Regardless, if the Court finds the provision unenforceable, the remedy would be to sever it, not invalidate the entire arbitration agreement. Agreement at CA-P.8. The Agreement contemplates that remedy. *Id*. It does not affect the intent of the underlying delegation clause or arbitration provision, and it comports with the strong federal policy favoring arbitration. *Brne v. Inspired eLearning*, No. 17-CV-02712, 2017 WL 4263995, at *6 (N.D. Ill. Sept. 26, 2017).

### B. The mass arbitration and bellwether provision does not render the delegation clause unconscionable.

Plaintiffs' arguments as to the mass arbitration and bellwether provision are not responsive to the Court's order. The Court requested "additional briefing on the issue of whether the delegation clause in combination with other provisions of the arbitration agreement is unconscionable under Illinois law." Provisions outside delegation itself may be considered only to the extent they specifically impact delegation. *Rent-A-Ctr., W.,* 561 U.S. at 73-74. A challenge to delegation may

8

not be used as a foothold to challenge the overall fairness of the agreement to arbitrate, which is exactly what Plaintiffs attempt here. For instance, Plaintiffs challenge the mass arbitration and bellwether provision (paragraph 6), arguing that paragraph 6 renders the entire agreement unconscionable. That, however, is a question for the arbitrator, Dkt. 44 at 6-12, not the Court. Plaintiffs' arguments related to the bellwether and mass arbitration provision fail because they are unrelated to the specific issue of delegation.

Even if the conscionability or unconscionability of the arbitration agreement as a whole was before the Court, Plaintiffs' arguments would still fail. Plaintiffs assume that paragraph 6 will be triggered, but there are just two plaintiffs in this case. Two claims do not trigger paragraph 6. While Plaintiffs' counsel may hope that other individuals would choose to be represented by them, or to coordinate with them, that is speculation. The claims of individual consumers, whose counsel is not the same or coordinated, do not trigger paragraph 6 either.

Even if this case involved significantly more than two claimants, Plaintiffs' argument that paragraph 6 will result in unconscionable delays rests on unfounded assumptions coupled with misunderstandings or misstatements about that paragraph. Contrary to Plaintiffs' description, the provision states that the staged cases will be arbitrated simultaneously, first in batches of 50 cases and then in batches of 80. Each stage is followed by a mediation of all remaining cases in the coordinated proceedings. Verizon pays the fees for mediation. After the first two stages, the parties can opt out and proceed in court or continue the batching process. In their quotation from paragraph 6, Plaintiffs misconstrue the process and omit the opt-out provision. Dkt. 44 at 7.

Plaintiffs' reliance on *MacClelland v. Cellco Partnership*[3] demonstrates that they are stretching well beyond the limited scope of the alleged unconscionability of the delegation clause.

---

[3] 609 F. Supp. 3d 1024 (N.D. Cal. 2022)

Dkt. 44 at 11. In *MacClelland*, the court applied the unconscionability law of another jurisdiction to the overall fairness of an outdated Customer Agreement that did not contain a delegation clause. Plaintiffs make no effort to relate *MacClelland* to the delegation clause at issue here, because they cannot. The court's decision in *MacClelland* is simply not relevant to the issue before the court.

Plaintiffs also argue that the mass arbitration and bellwether provision is wholly one-sided. Dkt. 44 at 6. This too is not an issue related to delegation, and it is not true in any event. Multiple provisions favor Plaintiffs. For example, Verizon pays not just the mediation fees but also the fees of the AAA and the arbitrator (as long as the Plaintiffs fully participate in the proceeding). Agreement at CA-P.7. Moreover, Verizon in many circumstances will pay a successful claimant $5,000 (the high end of what Plaintiffs say is the value of their claim) plus reasonable attorneys' fees. *Id*. And Plaintiffs are not without a forum; they can always opt out of arbitration and pursue their claims in small-claims court. *Id*. at CA-P.8. Finally, arbitration occurs in Plaintiffs' backyard, not at a far-off forum. *Id*. at CA P.6. *See Tortoriello v. Gerald Nissan of N. Aurora, Inc*., 379 Ill. App. 3d 214, 237, 882 N.E.2d 157, 178 (2008) (parties need not have identical rights and obligations under an arbitration clause for it to be enforceable).

Plaintiffs have offered no reason why it would be specifically unfair to allow the arbitrator to determine issues of enforceability, much less the administrative issue of how the cases will proceed. The mass arbitration and bellwether provisions have nothing to do with *who* decides gateway issues, and Plaintiffs have offered no reason why AAA cannot decide gateway issues to arbitrability. *Schein* and its progeny clearly instruct that, in the circumstances presented here, the correct action is to compel arbitration.

**C. The class-action waiver does not render the delegation clause unconscionable.**

Plaintiffs' arguments based on the class-action waiver provision (1) go to the enforceability of the agreement as a whole and not the delegation clause, and (2) are (once again) premised on

10

gross misstatements about what the arbitration provision says.

### 1. Plaintiffs' arguments go to the enforceability of the Agreement as a whole.

Whether the claims proceed individually or on an aggregate basis is independent issue from delegation, which involves the fairness of having the AAA decide gateway issues. Plaintiffs make no effort to demonstrate otherwise. Plaintiffs have advanced no argument that the class-action waiver makes the delegation clause unconscionable, because they cannot. The class action waiver in paragraph 9 applies only after a party opts out of arbitration. It has no bearing on or relation to the delegation clause, and thus cannot be used to support an argument that the delegation clause is unconscionable. *Toth v. Everly Well, Inc.*, 118 F.4th 403, 416 (1st Cir. 2024) (noting that plaintiff failed to show how any provision made delegation provision itself unconscionable or restricted ability to challenge validity of arbitration agreement before arbitrator); *Olivares v. Uber Techs., Inc.*, No. 16 C 6062, 2017 WL 3008278, at *3 (N.D. Ill. July 14, 2017) (Alonso, J.) (declining to address class-action waiver when granting motion to compel arbitration).

### 2. The class-action waiver is enforceable.

Plaintiffs' arguments also fail because, even if the class action waiver could be tethered to delegation itself, those arguments depend on a misreading of the applicable law and Verizon's arbitration agreement.

Plaintiffs rely on *Kinkel v. Cingular Wireless LLC* to support their argument that the class action waiver at issue is unconscionable. But *Kinkel* didn't even involve a class-action waiver; it involved a clause barring class treatment in arbitration. *Kinkel*, 223 Ill.2d at 6, 857 N.E.2d at 255. Moreover, as this Court has noted, the United States Supreme Court disagreed with this part of *Kinkel*'s analysis. *See Auyeung v. Toyota Motor Sales, USA, Inc.*, No. 1-278, 2019 WL 3385189, at *8 (N.D. Ill. July 1, 2019) (Alonso, J.). State law rules striking down arbitration clauses that bar class wide arbitration are preempted by the Federal Arbitration Act. *AT&T Mobility LLC v.*

11

*Concepcion*, 563 U.S. 333, 350 (2011). "To whatever extent state law might hold that plaintiff's arbitration agreement is substantively unconscionable because of the class-action waiver, the FAA preempts the state-law rule and requires enforcement of the agreement." *Auyeung*, 2019 WL 3385189, at *8.[4]

Plaintiffs are also wrong on the facts. Where, as here, a party seeks to invalidate an arbitration provision on the ground that arbitration would be "prohibitively expensive," that party has the burden to show the likelihood of incurring those costs. *Agha v. Uber Techs., Inc.*, 730 F. Supp. 3d 756, 769 (N.D. Ill. 2024) (party must provide individualized evidence to show she is likely to face prohibitive costs and is financially incapable of meeting those costs). Plaintiffs have not done so. In fact, the customer agreement obligates Verizon to pay Plaintiffs' reasonable attorney's fees under two circumstances (where Verizon makes a written settlement offer that a plaintiff rejects and the arbitrator awards more than that offer but less than $5,000, or where Verizon does not make a written settlement offer and the arbitrator awards any amount of money but less than $5,000, Verizon pays the fees). Agreement at CA-P.7.

**IV.     There is no bar under Illinois law to delegating gateway issues to the arbitrator.**

Ignoring well-settled Supreme Court precedent that allows parties to freely contract the terms by which their claims will be arbitrated, Plaintiffs appear to argue that Illinois declines to enforce delegation clauses in the context of consumer-arbitration provisions. Dkt. 44 at 2. This is not correct, and is directly contradicted by controlling Supreme Court law, which would preempt Illinois law if it were different (and it is not). *E.g.*, *Coinbase*, 602 U.S. at 152.

First, consumer-arbitration provisions are not looked at with suspicion in Illinois. Illinois

---

[4] *Deposit Guaranty National Bank, Jackson, Miss. v. Roper*, 445 U.S. 326, 339 (1980), and *Mace v. Van Ru Credit Corp.*, 109 F.3d 338, 344 (7th Cir. 1997), which Plaintiffs cite (Dkt. 44 at 12 & nn.35 & 36) have nothing to do with class-action waivers in arbitration.

12

has a "strong public policy favoring the enforcement of arbitration agreements," *Bess v. DirecTV, Inc.*, 381 Ill. App. 3d 229, 239, 885 N.E.2d 488, 497 (2008), and the rule is that "one who signs a contract is presumed to have read it and understood it." *K.H. by & through Headlee v. Chicago Urb. Air, LLC*, No. 22-CV-06494, 2023 WL 6976990, at *4 (N.D. Ill. Oct. 23, 2023) (failure to read contract does not make it unconscionable). And to the extent Plaintiffs are arguing that such provisions turn an agreement into a contract of adhesion, that is both incorrect and irrelevant. Nonnegotiable contracts "are a fact of modern life" and used "routinely" in consumer transactions. *Kinkel*, 223 Ill. 2d at 26, 857 N.E.2d at 266; *see K.H. by & through Headlee*, 2023 WL 6976990, at *4 (consumer "could have walked away, but instead she signed" the contract).

Second, the two cases Plaintiffs cite did not even involve delegation clauses. *See Hwang v. Pathway LaGrange Prop. Owner, LLC*, 2024 IL App (1st) 240534, ¶¶ 1-5 (2024); *Razor v. Hyundai Motor Am.*, 222 Ill. 2d 75, 81, 854 N.E.2d 607, 612 (2006).[5] Instead, these cases illustrate the rarity of exceptions to the general rule of enforceability of consumer-arbitration agreements. Both cases concerned consumers who were given no opportunity to review the agreement before signing. In *Razor*, the agreement was out of reach until after the consumer purchased a vehicle, rendering the agreement procedurally unconscionable. *Razor*, 222 Ill. 2d at 81, 854 N.E.2d at 612. *Hwang* concerned an 89-year-old who was given a 75-page residency agreement the day before she was scheduled to be admitted to a nursing facility. *Hwang*, 2024 IL App (1st) 240534, ¶¶ 1-5.

Here, in contrast, the record establishes that Plaintiffs not only had the opportunity to review the eight-page Agreement but in fact were required to scroll through it from beginning to

---

[5] A third case Plaintiffs cite for a different proposition, *Atwood v. Rent-A-Ctr. E., Inc.*, No. No. 15-cv-1023, 2016 WL 2766656 (S.D. Ill. May 13, 2016), applied the Illinois Uniform Arbitration Act which, the court observed, appears to differ from the Federal Arbitration Act in giving effect to delegation clauses. *Id.* at *4.

13

end before signing it. Decl. of Lacy J. Kennedy, IV (Mar. 13, 2025) Dkt. 45-1 at 2-4, ¶¶ 8-11.

## CONCLUSION

For the foregoing reasons and the reasons stated in Verizon's motion to compel arbitration and reply, the Court should grant the motion to compel arbitration, and it should stay these proceedings.

Respectfully submitted and signed by:

        BARON HARRIS HEALEY

        By: */s/ Steven L. Baron* .
        Steven L. Baron (ARDC # 6200868)
        150 South Wacker Drive, Suite 2400
        Chicago, Illinois 60606
        Telephone: (312) 741-1027
        E-Mail: sbaron@bhhlawfirm.com
        HUNTON ANDREWS KURTH LLP

        -and-

        Ann Marie Mortimer (Pro hac vice pending)
        550 South Hope Street, Suite 2000
        Los Angeles, California 90071-2627
        Telephone: (213) 532-2000
        E-Mail: amortimer@HuntonAK.com

        Tara L. Elgie (IL General Bar No. 48259)
        1445 Ross Avenue, Suite 3700
        Dallas, Texas 75202
        Telephone: (214) 979-8212
        E-Mail: telgie@HuntonAK.com

        *Attorneys for Cellco Partnership d/b/a*
        *Verizon Wireless, and Verizon*
        *Communications Inc.*