UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| Thelton George Parker, Jr. and Steven Doyle, Individually and on Behalf of All Others Similarly Situated, | ) ) ) ) | |
| Plaintiffs, | ) ) | Case No. 24-cv-08436 |
| v. | ) ) | Hon. Jorge L. Alonso |
| Verizon Communications Inc. and Cellco Partnership d/b/a Verizon Wireless, | ) ) ) ) | |
| Defendants. | ) | |

**Memorandum Opinion and Order**

Before the Court are Defendants Verizon Communications Inc. and Cellco Partnership's motions to compel arbitration (ECF No. 17) and dismiss Plaintiffs' complaint (ECF No. 20). For the reasons stated below, Defendants' motion to compel arbitration is granted, Defendants' motion to dismiss is denied as moot, and the Court stays this case during the pendency of arbitration.

**Background**

Plaintiffs Thelton Parker and George Doyle filed this putative class action on September 13, 2024, alleging that Defendants violated the Illinois Biometric Information Privacy Act ("BIPA") through the collection, use, and storage of customer voiceprints without proper consent in connection with a Voice ID service which became available in 2021. Voice ID is described by the Defendants as a biometrics system that uses customers' voices to help authenticate their identity when they call Defendants for service. Plaintiff Thelton Parker became a Verizon customer around the beginning of 2022 and enrolled in Voice ID two months later. Plaintiff Steven

1

Doyle became a Verizon customer in 2019 and enrolled in Voice ID at an unspecified date while living in Illinois.

At the time that Plaintiffs initially purchased services from Verizon, they signed a Service Customer Receipt ("SCR") which provided "I have read and agree to the Verizon Customer Agreement and Verizon Privacy Policy, including settlement of dispute by arbitration instead of jury trial[.]" (*See, e.g.*, ECF No. 23-1 at 4.) The parties agree that the arbitration agreement that is relevant to this dispute comes from the 2024 Customer Agreement. The arbitration agreement requires that disputes be brought in either arbitration or small-claims court. When disputes are brought to arbitration, the arbitrator must resolve disputes "regarding the validity, enforceability, or scope of any portion of the agreement (including the agreement to arbitrate)." (ECF No. 23-1 at 150 (cleaned up).) The provision prohibits actions that may ultimately proceed to court from being brought as class or collective actions and provides certain bellwether procedures in the event that specified numbers of arbitrations are filed by coordinated counsel.

On November 8, 2024, Defendants moved to compel arbitration of Plaintiffs' claims (ECF No. 17) and in the alternative to dismiss Plaintiffs' claims (ECF No. 20). On February 20, 2025, the Court requested supplemental briefing on the issue of unconscionability and a stipulation as to the manner in which the arbitration agreement was provided to Plaintiffs, which the parties provided. (ECF Nos. 40, 44–46.)

## Discussion

For the reasons that follow, the Court grants Defendants' motion to compel arbitration, denies Defendants' motion to dismiss as moot, and stays this action pending the resolution of arbitration.

2

**Motion to Compel Arbitration**

Defendants have moved to compel this dispute to arbitration. The Federal Arbitration Act reflects a "liberal federal policy favoring arbitration and the fundamental principle that arbitration is a matter of contract." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (internal citations omitted). Under the FAA, arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. State law can render an arbitration agreement unenforceable so long as the state law does not "discriminate[] against arbitration agreements relative to other contracts." *Rodgers-Rouzier v. Am. Queen Steamboat Operating Co., LLC*, 104 F.4th 978, 985 (7th Cir. 2024).

Certain arbitration agreements contain a delegation provision, where "parties . . . agree to have an arbitrator decide not only the merits of a particular dispute but also 'gateway' questions of 'arbitrability,' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 68 (2019). If a court determines that "a valid [arbitration] agreement exists" then it "may not decide an arbitrability question that the parties have delegated to an arbitrator" if that delegation is clear and unmistakable. *Id.* at 69. However, a court should decline to enforce a delegation provision when it is unconscionable, whether standing alone or in conjunction with other provisions. *Coinbase, Inc. v. Suski*, 602 U.S. 143, 152 (2024) ("In cases where parties have agreed to only one contract, and that contract contains an arbitration clause with a delegation provision, then, absent a successful challenge to the delegation provision, courts must send all arbitrability disputes to arbitration."); *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 72 (2010) ("Accordingly, unless Jackson challenged the delegation provision specifically, we must treat it as valid under § 2, and

must enforce it under §§ 3 and 4, leaving any challenge to the validity of the Agreement as a whole for the arbitrator."); *Fahy v. Minto Dev. Corp.*, 722 F. Supp. 3d 784, 798 (N.D. Ill. 2024) (courts may consider challenges to provisions of an arbitration agreement to the extent they undermine the enforceability of the delegation provision (citing *Rent-A-Center*, 561 U.S. at 74)); *Holley-Gallegly v. TA Operating, LLC*, 74 F.4th 997, 1002 (9th Cir. 2023) ("A party is therefore permitted under *Rent-A-Center* to challenge the enforceability of a delegation clause by explaining how 'unrelated' provisions make the delegation unconscionable.").

Here, Plaintiffs do not dispute the existence of an arbitration agreement or the presence of clear and unmistakable evidence of an agreement to arbitrate arbitrability through a delegation provision that provides arbitration is required for "any dispute regarding the validity, enforceability, or scope of any portion of this agreement (including the agreement to arbitrate)." (ECF No 23-1 at 150 (cleaned up).) Instead, Plaintiffs argue that the arbitration agreement (1) does not cover the current dispute and (2) is unconscionable.

I. The Arbitration Agreement's Coverage of the Dispute

Plaintiffs argue that they have not agreed to arbitrate claims relating to Voice ID because Voice ID is not explicitly referenced in the Customer Agreement, and while the accompanying Privacy Policy listed certain states' privacy statutes, it did not reference BIPA. However, Plaintiffs do not argue that no arbitration agreement exists between the Defendants and Plaintiffs, but simply that by its terms it cannot be applied to this dispute. *Janiga v. Questar Cap. Corp.*, 615 F.3d 735, 743 (7th Cir. 2010) (holding that an arbitration contract is formed when the signed contract contains an arbitration clause). And a delegation provision allows an arbitrator rather than a court to decide whether a dispute is covered by an arbitration agreement. *New Prime Inc. v. Oliveira*,

586 U.S. 105, 111–12 (2019) ("A delegation clause gives an arbitrator authority to decide even the initial question whether the parties' dispute is subject to arbitration."); *Henry Schein*, 586 U.S. at 68 (holding delegation provisions allow an arbitrator to decide "whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy.") Here, the delegation provision clearly grants the arbitrator the discretion to resolve disputes regarding the scope of the arbitration agreement. (ECF No. 23-1 at 150.) Accordingly, Plaintiffs' argument fails because an arbitration agreement exists and Plaintiffs' argument goes to the scope of the arbitration agreement, which is for an arbitrator to decide.

## II. Unconscionability

Plaintiffs argue that the delegation provision is both substantively and procedurally unconscionable. "A finding of unconscionability may be based on either procedural or substantive unconscionability, or a combination of both." *Kinkel v. Cingular Wireless LLC*, 223 Ill. 2d 1, 21 (2006). The Court addresses the two in turn.

### A. Procedural Unconscionability

Plaintiffs argue that the arbitration agreement is procedurally unconscionable because the terms of the arbitration agreement were not readily discernable at the time Plaintiffs signed the SCRs, disparity in bargaining power, and the fact the contract is one of adhesion. Procedural unconscionability arises when there is "some impropriety during the process of forming the contract depriving a party of a meaningful choice." *Phoenix Ins. Co. v. Rosen*, 242 Ill. 2d 48, 60 (2011). "Factors to be considered in determining whether an agreement is procedurally unconscionable include whether each party had the opportunity to understand the terms of the contract, whether important terms were hidden in a maze of fine print, and all of the circumstances

surrounding the formation of the contract. *Id.* (cleaned up). At the outset, the Court notes that a lack of bargaining power and the fact a contract is one of adhesion cannot alone create procedural unconscionability. *Goesel v. Boley Int'l (H.K.) Ltd.*, 806 F.3d 414, 423 (7th Cir. 2015) ("Illinois courts have required some added coercion or overreaching before they will hold a contract of adhesion unenforceable." (cleaned up)).; *Zuniga v. Major League Baseball*, 2021 IL App (1st) 201264, ¶ 15 ("[A] provision contained in a consumer contract will not be found procedurally unconscionable merely because a business sought to impose it through a standardized, take-it-or-leave-it contract over which the consumer had no ability to negotiate (*i.e.*, a contract of adhesion).").

As such, the Court considers whether the alleged lack of accessibility to the arbitration agreement is sufficient to render it procedurally unconscionable. The portion of the SCRs signed by the Plaintiffs are the same or substantially similar to the below:



(ECF No. 23-1 at 4.)

Plaintiffs argue that the arbitration agreement is procedurally unconscionable because the SCRs do not contain the actual terms of the arbitration agreement, which were provided only through a non-hyperlinked web address, citing to *Zuniga,* 2021 IL Appl (1st) 20246. There, the court found that an arbitration agreement was procedurally unconscionable when it was referenced in fine print on the back of a ticket and the plaintiff would need to access either the ticket office or a website to find the full terms of the agreement. *Id.* ¶ 21. However, in reaching this conclusion, the court relied on "factors . . . that make the arbitration provision difficult or onerous to find or obtain at the time of using the ticket . . . in the context of attending a baseball game" which made it less likely given the totality of the circumstances the plaintiff could access the arbitration provision, the fact that the contract was entered into through the conduct of using the ticket rather than through signing an agreement, and the fact that the language on the back of the ticket was called to notice through small font on the front of the ticket and did not inform the Plaintiff of the waiving of legal rights. *Id.* ¶¶ 21–26, 36. Further, the court emphasized the dissimilarity between the case at hand and cases "involving a signed contract or an internet transaction." *Id.* ¶ 28–29, 34.

Here, Plaintiffs had no similar distraction such as the commotion of a baseball game and, as discussed above, were signing an agreement that informed them of the specific rights they were waiving and where to find the full agreement next to the signature line on the SCR. In this circumstance, the Court cannot find that the terms of the arbitration agreement are "so difficult to find, read, or understand that the plaintiff[s] cannot be fairly said to have been aware [they] were agreeing to it." *Razor v. Hyundai Motor Am.*, 222 Ill. 2d 75, 100 (2006) (finding procedural unconscionability where there was no evidence a contractual provision was "made available to the

7

plaintiff at or before the time she signed the sales contract" because it was placed in a car glove compartment inaccessible until the customer took delivery and was not mentioned in the sales contract). To the extent that there was some difficulty in accessing the terms of the arbitration agreement when signing the SCR, the Court finds that the degree of procedural unconscionability arising from it is slight at most. *Kinkel*, 223 Ill. 2d at 27 (finding only "a degree" of procedural unconscionability that did not itself render a provision unenforceable when fee information regarding arbitration was available only "on request").

### B. Substantive Unconscionability

Plaintiffs argue that the delegation provision is substantively unconscionable when taken in combination with (1) a provision of the arbitration agreement requiring the replacement of arbitrators in certain instances, (2) a provision waiving Plaintiffs' right to class or collective actions, and (3) a provision relating to mass arbitration. Contractual terms are substantively unconscionable when they "are inordinately one-sided in one party's favor." *Goesel.*, 806 F.3d at 423 n.2 (quoting *Razor.,* 222 Ill. 2d at 100).

#### i. The Arbitrator Replacement Provision

Plaintiffs first argue that the delegation provision is unconscionable in tandem with a provision of the agreement that provides "[i]f the AAA refuses to enforce any part of the arbitration provision, you and Verizon will select another arbitrator. If there is no agreement, a court in the county of your billing address will select an arbitrator to decide the dispute." (ECF No. 23-1 at 150 (cleaned up).) They argue that this provision means that if an arbitrator finds a provision in the agreement to be unenforceable, the arbitrator replacement provision requires a new arbitrator to be appointed, and such process would run indefinitely until an arbitrator enforced the challenged

provision because the arbitrator must decide issues of arbitrability. Defendants dispute this interpretation, arguing that the provision applies only if the AAA, rather than an individual arbitrator of the AAA, declines to exercise jurisdiction.

Arbitration agreements are interpreted "according to their plain meaning" with a goal of construing the language to reach "a commonsense result." *United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied Indus. & Serv. Workers Int'l Union v. TriMas Corp.*, 531 F.3d 531, 536 (7th Cir. 2008). In construing a contract under Illinois law, courts avoid "interpretations of the agreement that would produce absurd results." *Health Pros., Ltd. v. Johnson*, 339 Ill. App. 3d 1021, 1036 (2003); *see also Gadsby v. Health Ins. Admin., Inc.*, 168 Ill. App. 3d 460, 470 (1988) ("Contracts should be construed to avoid oppressive results.").

Under the plain meaning of the provision, Plaintiffs' concerns are unfounded. First, the provision speaks to the AAA—defined elsewhere as the American Arbitration Association—refusing to enforce a provision of the agreement, not an individual arbitrator before the AAA. As such, if the AAA makes no decision regarding the enforceability of a provision of the arbitration agreement, this provision will not be triggered, even if an AAA arbitrator declines to enforce a provision of the arbitration agreement. If the AAA itself declines to enforce a part of the arbitration agreement, the parties "will select another arbitrator." While the provision does not make clear that the new arbitrator will not be before the AAA, that is the only logical outcome if the AAA has already declined to enforce a provision of the arbitration agreement. And with this interpretation, Plaintiffs' argument that a never-ending loop that would eventually require each provision of the arbitration agreement to be enforced is moot, and the Court cannot find that this provision in tandem with the delegation provision renders the delegation provision substantively

unconscionable.

### ii. The Class Action Waiver

Plaintiffs next argue that the arbitration agreement's class action waiver is unconscionable. The class action waiver provision requires that if a dispute between Defendants and a customer proceeds to Court, it shall not be brought on a class or collective basis. (ECF No. 23-1 at 152.) Given the Court's construction of the arbitrator replacement provision discussed above, Plaintiffs have provided, and the Court can discern, no connection between this provision—which applies only after a case proceeds to court and the action is no longer subject to arbitration—and the delegation provision. (ECF Nos. 27 at 18–19; 44 at 12–14.) As such, even assuming the class action waiver is unconscionable on its own, it would not help Plaintiffs avoid arbitration at this stage. *Coinbase*, 602 U.S. at 152.

### iii. The Mass Arbitration Provision

Next, Plaintiffs argue that the mass arbitration provision is substantively unconscionable. The mass arbitration provision provides that if 50 customers attempt to bring similar claims with "the same or coordinated counsel" two phases of coordinated arbitrations occur in a bellwether process with mediations occurring after the first and second phases. (ECF No. 23-1 at 151.) After the second phase, any individual who did not participate in the bellwether process may opt out and proceed to file an individual complaint in court. (*Id.*) Again, Plaintiffs make challenges to the mass arbitration provision that are either untied to the delegation provision or moot in light of the Court's construction of the arbitrator replacement provision. These challenges are irrelevant at this stage. *Coinbase*, 602 U.S. at 152.

In addition, Plaintiffs briefly argue in a footnote of their response brief that the mass

10

arbitration provision renders the delegation provision unconscionable because the bellwether process could delay initial determinations regarding arbitrability, citing *Pandolfi v. AviaGames, Inc.*, No. 23-CV-05971-EMC, 2024 WL 4051754, at *5 (N.D. Cal. Sept. 4, 2024). (ECF No. 27 at n.12.) Plaintiffs provided no explanation of why Illinois law on unconscionability mandates the same result here. (*Id.*) The Court asked the parties to provide supplemental briefing on substantive unconscionability and asked the parties, should they cite the laws of other states, to "explain how Illinois law on unconscionability compares to the law of the state at issue." (ECF No. 40 at 1–2.) In their supplemental brief, Plaintiffs provided no further argument on this point and briefly argued that the laws of California and Illinois are similar in connection with a different argument. (ECF No. 44 at 6–12.)

However, Illinois and California law on substantive unconscionability are not identical. *Boomer v. AT&T Corp.*, 309 F.3d 404, 422 n.10 (7th Cir. 2002) (declining to apply collateral estoppel on the issue of unconscionability where the first case involved California law and the subsequent case involved Illinois law because "the issues are not the same"). And the Plaintiffs have not provided, nor has the Court found, any authority suggesting that Illinois recognizes that the "chilling effect" central to the relevant holding in *Pandolfi*, 2024 WL 4051754, at *5–6 (citing cases considering a chilling effect for the substantive unconscionability analysis under California and Ohio law). Here, Plaintiffs bore the burden to demonstrate substantive unconscionability under Illinois law. *Matricciani v. Am. Homeowner Pres., Inc.*, 718 F. Supp. 3d 825, 837 (N.D. Ill. 2024) ("The party asserting unconscionability bears the burden of proving it." (citing *Razor*, 222 Ill.2d at 100 (2006))). They have not met this burden, and the Court will not construct an argument under Illinois law for them. *Nelson v. Napolitano*, 657 F.3d 586, 590 (7th Cir. 2011) ("Neither the district

11

court nor this court are obliged to research and construct legal arguments for parties, especially when they are represented by counsel.").

Accordingly, given that the Court finds no substantive unconscionability and little, if any, procedural unconscionability, the arbitration agreement is enforceable and the Court grants Defendants' motion to compel arbitration. The Court stays this action during the pendency of arbitration.

## Motion to Dismiss

Because the Court has compelled Plaintiffs' claims to arbitration, the Court denies Defendants' motion to dismiss as moot. *Henry Schein*, 586 U.S. 63 at 68 ("We have held that a court may not rule on the potential merits of the underlying claim that is assigned by contract to an arbitrator, even if it appears to the court to be frivolous." (quotations omitted)).

## Conclusion

For the reasons discussed above, the Court grants Defendants' motion to compel arbitration [17], denies Defendants' motion to dismiss [20] as moot, and stays this case during the pendency of arbitration. The parties shall submit a joint status report on August 28, 2025 updating the Court on whether arbitration has concluded.

**SO ORDERED.**                          **ENTERED: May 30, 2025**

**HON. JORGE ALONSO**

**United States District Judge**